*Attorney Grievance Commission of Maryland v. Angel Arturo Viladegut*
Misc. Docket AG No. 54, September Term 2019

**Attorney Discipline – Competence, Diligence, and Communication with Client – Mishandling of Client Funds – Misrepresentation – Disbarment**.  Disbarment is the appropriate sanction where an immigration attorney failed to represent numerous clients competently and diligently and failed to communicate with them adequately concerning their cases, made knowing and intentional misrepresentations to tribunals, his clients and their family members, accepted fees he did not earn, failed to return unearned fees, abandoned his clients, and failed to respond to Bar Counsel's investigations of his clients' complaints.

Maryland Attorneys' Rules of Professional Conduct 19-301.1, 19-301.2, 19-301.3, 19-301.4(a)&(b), 19-301.5(a)&(b), 19-301.15(a)&(d), 19-301.16(d), 19-303.3(a), 19-308.1(a)&(b), 19-308.4(a), (c)&(d).

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 54

September Term, 2019

_____

ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND

V.

ANGEL ARTURO VILADEGUT

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: March 29, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This attorney disciplinary matter concerns Respondent Angel Arturo Viladegut, a Maryland attorney who committed various violations of the rules of professional conduct while providing immigration-related legal services in Maryland. Four immigration clients complained, over a relatively short period of time, to Bar Counsel. Those complaints, as documented by Bar Counsel, demonstrated a disturbing pattern of conduct in which Mr. Viladegut charged a fee to represent a recent immigrant at risk of removal from the United States, then did little or no work, and misrepresented the status of matters to the client and immigration court with adverse consequences to the client.

Mr. Viladegut was no more diligent in responding to the inquiries of Bar Counsel. He did not cooperate with Bar Counsel's investigation into his activities in Maryland, failed to respond to discovery requests in this proceeding, did not appear at the evidentiary hearing before the hearing judge, and did not respond to a show cause order as to whether he wished to participate in oral argument in this matter before this Court.

On March 1, 2021, after considering the matter on the papers submitted, we disbarred Mr. Viladegut and assessed the costs of this proceeding against him. We now explain the reasons why we took that action.

**I**

**Background**

*A.* *Procedural Context*

On December 17, 2019, the Attorney Grievance Commission, through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action against Mr. Viladegut

alleging that he had violated various provisions of the rules of professional conduct.[1]  In particular, Bar Counsel alleged that Mr. Viladegut had violated Rules 1.1 (competence), 1.2(a) (scope of representation), 1.3 (diligence), 1.4(a) and (b) (communication), 1.5(a) and (b) (fees), 1.15(a) and (d) (safekeeping property), 1.16(d) (declining or terminating representation), 3.3(a) (candor to the tribunal), 8.1(a) and (b) (bar admission and disciplinary matters), and 8.4(a), (c), and (d) (misconduct).  Bar Counsel also alleged that Mr. Viladegut had violated former Maryland Rule 16-606.1 (attorney trust account record-keeping),[2] but later withdrew that charge.

Pursuant to Maryland Rule 19-722(a), we designated Judge John M. Maloney of the Circuit Court for Montgomery County to conduct a hearing and to provide findings of fact and conclusions of law.  Thereafter, Mr. Viladegut was served with a summons, the petition, and Bar Counsel's discovery request for admissions of fact and genuineness of documents.  Mr. Viladegut failed to respond.  The hearing judge entered an order of default on August 24, 2020.  Mr. Viladegut was issued a notice of the order of default but failed to respond.

---

[1] At the beginning of the pertinent time period, these rules were part of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and codified in an appendix to Maryland Rule 16-812.  Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified in Title 19 of the Maryland Rules.  Presumably because Mr. Viladegut's conduct straddled the effective date of the recodification, Bar Counsel charged both the MLRPC and MARPC versions of the alleged violations.  For ease of reference, we will use only the shorter designations of the MLRPC – *i.e.*, Rule 1.1 in lieu of Maryland Rule 19-301.1.  *See* Maryland Rule 19-300.1(22).

[2] Effective July 1, 2016, this rule was recodified as Maryland Rule 19-407.

The hearing judge conducted an evidentiary hearing on October 19, 2020. Bar Counsel appeared, but Mr. Viladegut did not. Pursuant to Maryland Rule 2-424(b), the matters set forth in Bar Counsel's request for admissions of fact and genuineness of documents were deemed admitted and received into evidence. At the hearing, Bar Counsel also submitted additional documents, which were admitted into evidence. On November 30, 2020, the hearing judge issued an opinion containing his findings of fact and conclusions of law, as well as his findings concerning aggravating and mitigating circumstances. Neither party filed exceptions. We considered the matter on the papers submitted, without oral argument.[3]

## B. Facts

As no exceptions have been filed, we treat the hearing judge's findings of fact as established. Maryland Rule 19-741(b)(2)(A). We summarize below those findings of fact as they pertain to the violations alleged in the petition.

### 1. Mr. Viladegut's Law Practice

Mr. Viladegut has been a member of the Maryland Bar since December 13, 2012. At all times relevant to the current action, he maintained an office for his legal practice in Silver Spring, Maryland.

---

[3] On January 15, 2021, Bar Counsel filed a request to waive oral argument; Mr. Viladegut did not respond. We then entered an order directing Mr. Viladegut to show cause as to why oral argument should be held; Mr. Viladegut again did not respond. On March 1, 2021, we granted Bar Counsel's request.

2.     Representation of Anny Mestichelli and her son, DM

On March 25, 2015, Anny Mestichelli entered the United States through Texas with her one-year-old son, DM,[4] fleeing domestic violence in Honduras. They were apprehended by immigration agents and placed in removal proceedings. While those proceedings were pending, Ms. Mestichelli and DM were released, and they traveled to Maryland to live with Ms. Mestichelli's family in Silver Spring. The removal proceedings were transferred from an immigration court in Texas to one in Baltimore.

The immigration court in Baltimore mailed notices for a master calendar hearing scheduled for June 17, 2015. Ms. Mestichelli did not receive the notices because they listed an incorrect apartment number. As a result, Ms. Mestichelli did not attend the June 17 hearing, and the immigration court ordered that she and DM be removed from the United States. On August 24, 2016, Ms. Mestichelli was detained by immigration agents in connection with a report filed with Interpol by her estranged husband that Ms. Mestichelli had kidnapped DM. At that time, Ms. Mestichelli learned about the immigration court's removal order.

On August 25, 2016, Ms. Mestichelli's mother met with Mr. Viladegut about her daughter's case. Mr. Viladegut agreed to represent Ms. Mestichelli in immigration court

---

[4] Although there is no indication that anyone's identities were placed under seal during the evidentiary hearing, in his opinion the hearing judge used initials for individuals younger than 18 years old. We adopt the same convention.

for $500 per hearing, as well in the Interpol investigation.[5]  The hearing judge found that the terms of this agreement were not memorialized in a retainer agreement or other writing.

On August 30, 2016, Mr. Viladegut filed with the immigration court an emergency motion to reopen Ms. Mestichelli's removal proceedings and to stay her deportation pending a hearing on the merits.  Despite the earlier agreement with Ms. Mestichelli's mother to represent Ms. Mestichelli for $500 per hearing, Mr. Viladegut's motion stated in both its caption and text that he was representing Ms. Mestichelli *pro bono*.  The immigration court granted the motion, and Ms. Mestichelli's mother then paid Mr. Viladegut $1,500 for the three hearings that Mr. Viladegut anticipated would occur in his representation of Ms. Mestichelli.  Mr. Viladegut provided Ms. Mestichelli's mother with a receipt for the payment, which she subsequently lost.

On September 26, 2016, Ms. Mestichelli was released from detention, and a master calendar hearing was scheduled for October 31, 2016.  In mid-October, Ms. Mestichelli and her mother met with Mr. Viladegut to discuss Ms. Mestichelli's case.  Mr. Viladegut agreed to file an asylum application on behalf of Ms. Mestichelli, as well as custody and visa applications for DM.  He stated that these services would cost $7,000 plus costs and that Ms. Mestichelli could pay in installments.  The hearing judge found that, as with the earlier agreement with Ms. Mestichelli's mother, Mr. Viladegut did not memorialize the terms of this agreement in a retainer agreement or other writing.

---

[5] Ms. Mestichelli's husband withdrew the kidnapping report on August 25, 2016. Mr. Viladegut confirmed that fact by calling Interpol on August 26, 2016.

5

On October 31, 2016, Ms. Mestichelli and her family paid Mr. Viladegut $1,500.[6] That same day, Mr. Viladegut and Ms. Mestichelli were scheduled to appear before the immigration court for the master calendar hearing. Immediately prior to the hearing, Mr. Viladegut asked Ms. Mestichelli to sign an asylum application, which he then submitted to the court. Ms. Mestichelli did not have an opportunity to review the application before its submission. Upon reviewing it a few days later, she noted numerous errors, including that it listed her last name and address incorrectly and that it indicated she was from Guatemala instead of Honduras.

At the October 31, 2016, master hearing, Mr. Viladegut informed the immigration court that he would file a petition for special immigrant juvenile status ("SIJS")[7] on DM's behalf in the Circuit Court for Montgomery County. The hearing judge found that Mr. Viladegut never filed an SIJS petition on DM's behalf.

In January 2017, Ms. Mestichelli and her parents met with Mr. Viladegut to discuss whether Ms. Mestichelli could apply for a work visa. Mr. Viladegut asked Ms. Mestichelli to sign a blank application, which he said he would fill in later.

---

[6] Thereafter they made monthly payments of $200 to Mr. Viladegut.

[7] Special immigrant juvenile status is an immigration classification designed to provide "humanitarian protection for abused, neglected, or abandoned child immigrants." *Romero v. Perez*, 463 Md. 182, 187-89 (2019). An application for such status involves two primary steps: (1) an order from a state juvenile court that makes certain findings concerning the child's eligibility for such status and (2) a petition to the United States Citizenship and Immigration Services that includes the state court order and other supporting documentation. *Id*.

On February 4, 2017, Ms. Mestichelli and her parents met with Mr. Viladegut again. By this time, Ms. Mestichelli had become pregnant. Mr. Viladegut asked the parents to leave the room. According to Ms. Mestichelli, he then touched her in an inappropriate manner and stated that the pregnancy "decimated" her case but that he would give her a second chance.

Ms. Mestichelli's next hearing in immigration court was scheduled for April 10, 2017, and as that date approached, she called Mr. Viladegut to prepare. Mr. Viladegut told her he was unable to meet due to his own parents' medical issues. Mr. Viladegut failed to inform Ms. Mestichelli that her hearing had in fact been postponed until April 17, 2018 – a fact that she discovered when she called the immigration court.

In June 2017, Ms. Mestichelli met with Mr. Viladegut concerning DM's SIJS petition. Mr. Viladegut told Ms. Mestichelli that he would charge $2,000 for that petition and visa application, and she paid him $165 at that time. Ms. Mestichelli asked Mr. Viladegut for a copy of DM's SIJS petition. Mr. Viladegut responded that he would need to obtain a copy from the court.

The hearing judge found that Mr. Viladegut misled Ms. Mestichelli about the status of DM's SIJS petition until the end of July 2017, when Ms. Mestichelli independently determined that Mr. Viladegut had not submitted the SIJS petition. She then asked Mr. Viladegut for an accounting of work performed on her behalf. Mr. Viladegut failed to provide any accounting.

On August 3, 2017, Ms. Mestichelli terminated Mr. Viladegut as her attorney. She retained successor counsel on October 3, 2017. In December 2017, Ms. Mestichelli

repeatedly asked Mr. Viladegut for papers related to her case. Mr. Viladegut responded by telling Ms. Mestichelli to contact his secretary, who told Ms. Mestichelli that they could not find her file. When Ms. Mestichelli again tried to reached Mr. Viladegut, he failed to respond.

The hearing judge found that Ms. Mestichelli and her family paid Mr. Viladegut a total of $4,315 and that he failed to deposit or maintain those funds in an attorney trust account until earned.

3.      Representation of AB

On June 16, 2015, 17-year-old AB entered the United States through Texas, having left El Salvador to join her mother who lived in Maryland. AB was apprehended by immigration agents in Texas and placed in removal proceedings. While those removal proceedings were pending, AB was released on August 18, 2015, and sent to Maryland to live with her mother. Before being released, AB sought to have her removal proceedings transferred from an immigration court in Texas to one in Baltimore.

Approximately a week after AB arrived in Maryland, AB's mother met with Mr. Viladegut regarding her daughter's case. Mr. Viladegut agreed to represent AB in her immigration case. AB's mother paid Mr. Viladegut $50 in cash and signed a retainer agreement. Mr. Viladegut did not provide AB's mother with a copy of the agreement.

Despite AB's motion to transfer her case to Maryland, on August 27, 2015, the immigration court in Texas issued a notice for AB to appear for a master calendar hearing on September 8, 2015. AB never received this notice because it listed her address incorrectly. The hearing judge found that, despite having agreed to represent AB in the

8

matter, Mr. Viladegut had not entered his appearance in her immigration case or attempted to determine its status during the intervening two months. As a result, neither AB nor Mr. Viladegut attended the September 8 hearing. The immigration court ordered AB's removal, which she received notice of on September 11, 2015.

Later in September 2015, AB's mother met with Mr. Viladegut regarding AB's removal order. AB's mother paid Mr. Viladegut another $500. Mr. Viladegut told AB's mother that he would appeal the immigration court's removal order and the underlying determination that AB should be deported. On January 8, 2016, Mr. Viladegut attempted to file with the immigration court a notice of appearance and emergency motion to reopen AB's removal proceedings and to stay her deportation pending a hearing on the merits. The immigration court rejected the filing. In a form notice sent to Mr. Viladegut identifying the deficiency that resulted in the rejection of his filing, the immigration court had checked a box stating: "Please review practice manual. Require current E-28, include party address. E-28 exhibit." The hearing judge found that Mr. Viladegut failed to take any action to amend and re-file the emergency motion for approximately two months.

On March 15, 2016, Mr. Viladegut refiled with the immigration court in Texas his notice of appearance form and emergency motion to reopen AB's removal proceedings and stay her deportation pending a hearing on the merits. Despite already having received $550 for representing AB, Mr. Viladegut's motion noted in both its caption and text that he was representing AB *pro bono*. The hearing judge found that this statement in the motion was knowingly and intentionally false.

The immigration court granted the motion and set a master calendar hearing in AB's case for May 25, 2016. The hearing judge found that Mr. Viladegut did not advise AB of the new hearing date. Sometime prior to the May 25 hearing, Mr. Viladegut filed an emergency motion to change the venue from Texas to Maryland. That filing was not received by the immigration court until the day of the May 25 hearing. It also erroneously listed what apparently was the name of a different client and included an incorrect address for AB. The hearing judge found that Mr. Viladegut failed to tell AB that he had filed the motion or that it contained errors. Mr. Viladegut did not attend the May 25 hearing. Without ruling on the motion to change venue, the Texas immigration court ordered AB's removal for a second time. The hearing judge found that Mr. Viladegut failed to advise AB or her mother of this removal order.

On July 13, 2016, the immigration court rejected the motion to change venue. The form deficiency notice stated: "Please review the practice manual. This case was transferred to Houston Immigration Court." Sometime later in July, Mr. Viladegut's assistant called AB's mother and asked that she make an additional payment towards Mr. Viladegut's fees. AB's mother paid another $400 and requested an update on AB's case. Mr. Viladegut responded that "all was well." Between August 26, 2016, and January 25, 2017, AB's mother repeatedly texted Mr. Viladegut for updates on AB's case. Mr. Viladegut provided neither AB nor her mother with any substantive information regarding AB's case.

In December 2017, AB's mother retained successor counsel for AB, and learned, for the first time, that AB's removal had been ordered for a second time in May 2016. After

retaining new counsel for AB, her mother wrote Mr. Viladegut on December 5, 2017, to inform him of successor counsel and requested a copy of AB's file. Successor counsel also wrote to Mr. Viladegut, requesting a copy of AB's file as well as an explanation as to why AB was ordered removed in May 2016. The hearing judge found that Mr. Viladegut did not respond to the requests for AB's file or otherwise take any action on AB's case after filing the emergency motion to change venue in 2016. Successor counsel eventually had to file a Freedom of Information Act ("FOIA") request with U.S. Citizenship and Immigration Services to obtain a copy of AB's file.

4.      Representation of the Garay Family

In 2005, Ana Ramona Garay entered the United States, having left El Salvador and traveled to Maryland. At the time, Ms. Garay left her 10-year-old daughter, SG, and seven-year-old son, AG, with their aunt in El Salvador. In 2013, SG entered the United States, was apprehended by immigration agents, and was later released and joined her mother in Maryland. Sometime after SG entered the United States, AG followed, was apprehended by immigration agents, and was also released to join his mother and sister in Maryland.

On November 24, 2014, Ms. Garay and SG appeared before the immigration court in Baltimore for a master calendar hearing. SG requested a continuance to obtain counsel, and the court continued the hearing to March 25, 2015. At that time, Ms. Garay was introduced to Mr. Viladegut. Approximately one week later, Ms. Garay met with Mr. Viladegut to discuss her children's cases. Mr. Viladegut told Ms. Garay that SG and AG qualified for SIJS. Ms. Garay retained Mr. Viladegut to represent SG and AG and paid

11

him $1,000 to begin work on their cases. The terms of Mr. Viladegut's representation were not memorialized in a retainer agreement or other writing.

On March 25, 2015, Ms. Garay paid Mr. Viladegut an additional $1,000. That same day, Ms. Garay, SG, AG, and Mr. Viladegut appeared before the immigration court for a master calendar hearing. Mr. Viladegut told the court he intended to file SIJS petitions for SG and AG during the following week. The immigration court originally scheduled a status hearing for July 15, 2015, but later continued it to July 20, 2015. Mr. Viladegut did not file SG and AG's SIJS petitions in the Circuit Court for Montgomery County until the day of the status hearing in immigration court – July 20, 2015.

On July 20, 2015, Ms. Garay and Mr. Viladegut appeared before the immigration court for the status hearing. Mr. Viladegut told the immigration court he had just "re-filed" the SIJS petitions because there were some issues with the "documentation." The immigration court scheduled another status hearing for February 18, 2016. After the hearing, Ms. Garay paid Mr. Viladegut another $1,000.

The hearing judge found that there was no evidence to support Mr. Viladegut's statement to the immigration court on July 20, 2015 that he had previously filed the SIJS petitions in State court. The hearing judge also found that Mr. Viladegut's statements to the immigration court were knowingly false and intentionally misleading to conceal Mr. Viladegut's neglect in filing the SIJS petitions.

Later in 2015, Ms. Garay and AG met with Mr. Viladegut in his office. Mr. Viladegut told Ms. Garay that her children's cases were advancing. Ms. Garay paid Mr. Viladegut another $1,000.

On November 23, 2015, the Circuit Court for Montgomery County issued a Notice of Contemplated Dismissal of SG and AG's SIJS petitions pursuant to Maryland Rule 2-507 for lack of prosecution. On December 18, 2015, Mr. Viladegut moved to defer the dismissal. The court granted that motion on January 12, 2016.

In late 2015, Ms. Garay made numerous attempts to contact Mr. Viladegut. Mr. Viladegut failed to respond. When Ms. Garay went to Mr. Viladegut's office to get an update, Mr. Viladegut said that he had filed the necessary paperwork for SG and AG's SIJS petitions, and he requested another payment. Ms. Garay paid him another $500.

Mr. Viladegut requested a continuance of the February 18, 2016 status hearing due to illness. The immigration court granted the request and continued the matter to a master calendar hearing on January 19, 2017. In the meantime, on May 19, 2016, the Circuit Court for Montgomery County dismissed SG and AG's SIJS petitions, without prejudice, for lack of prosecution.

The hearing judge found that Mr. Viladegut failed to notify Ms. Garay of the dismissal of the SIJS cases. Mr. Viladegut moved to vacate the dismissal. That motion was granted by the Circuit Court on July 7, 2016. The hearing judge found that, despite the reinstatement of SG and AG's SIJS petitions, Mr. Viladegut failed to take any action.

On November 14, 2016, the Circuit Court again dismissed the SIJS petitions, without prejudice, for lack of prosecution. The hearing judge found that Mr. Viladegut did not notify Ms. Garay of that second dismissal or move to vacate it.

On January 19, 2017, Ms. Garay and Mr. Viladegut appeared before the immigration court for a master calendar hearing. During the hearing, Mr. Viladegut told

13

the immigration court he had not yet received a hearing date from the Circuit Court for SG and AG's SIJS petitions which, in fact, the Circuit Court had dismissed two months earlier. The immigration court scheduled another status hearing for November 28, 2017. On the day of the January 19 hearing, Ms. Garay paid Mr. Viladegut another $1,000.

On November 28, 2017, Mr. Viladegut appeared before the immigration court for the status hearing and again told the court that SG and AG's SIJS petitions were still pending in State court. Thereafter, Ms. Garay periodically tried to contact Mr. Viladegut about the status of SG and AG's SIJS petitions. Mr. Viladegut failed to respond. When Ms. Garay went to Mr. Viladegut's office to get an update, she learned that his office had moved to another location.

In April 2018, Ms. Garay retained successor counsel, who wrote to Mr. Viladegut requesting SG and AG's files. Mr. Viladegut did not respond.

The hearing judge found that, in total, Ms. Garay paid Mr. Viladegut $5,500[8] and that he failed to deposit or maintain those funds in an attorney trust account until earned. The hearing judge also found that Mr. Viladegut failed to provide Ms. Garay with an invoice for his services or otherwise to account for his time.

5.      Representation of Carlos Arturo Garcia Lemus

On May 1, 2006, Carlos Arturo Garcia Lemus entered the United States through Texas, having left El Salvador to join his family in Maryland. On or about June 29, 2018,

---

[8] Although the record supports the hearing judge's findings as to the total amount paid to Mr. Viladegut by Ms. Garay, there appear to be some discrepancies as to the precise dates on which those payments were paid.

Mr. Lemus was arrested in Maryland and charged with driving on a suspended license. Because of his immigration status, he was detained and placed in removal proceedings. Mr. Lemus was scheduled for a hearing before the immigration court on August 27, 2018.

In July 2018, Mr. Lemus' wife retained Mr. Viladegut to represent her husband in his immigration case. Mr. Viladegut told Mr. Lemus' wife that he would file an asylum application on her husband's behalf, based on Mr. Lemus' fear of returning to El Salvador. During the course of her interactions with Mr. Viladegut, Mr. Lemus' wife paid him a total of $1,200 to represent her husband. Mr. Viladegut filed an asylum application on behalf of Mr. Lemus in August 2018, and the immigration court scheduled a hearing on the application for December 3, 2018.

Between July and September 2018, Mr. Lemus' wife called and texted Mr. Viladegut on numerous occasions asking for updates on her husband's case. Mr. Viladegut responded by text stating, among other things, that "all is going well" or "the case is moving forward." Mr. Viladegut also dissuaded her from calling him, telling her "please don't call me unless it's an emergency."

Frustrated with Mr. Viladegut's failure to respond to her requests for information, Mr. Lemus' wife retained successor counsel on October 5, 2018, to represent her husband. On October 17, 2018, with the assistance of successor counsel, Mr. Lemus' wife wrote to Mr. Viladegut asking for her husband's file and the return of any unused portion of the $1,200 she had paid him. Mr. Viladegut did not respond. Successor counsel eventually had to file a FOIA request with the Executive Office for Immigration Review to obtain a copy of Mr. Lemus' file. Successor counsel did not obtain a copy of Mr. Lemus' file until

15

early December 2018, just before the December 3, 2018 hearing. Mr. Lemus' asylum application was denied, he was ordered removed, and he was deported to El Salvador on January 7, 2019.

6. Mr. Viladegut Fails to Respond to Bar Counsel's Inquiries

*Complaint by Ms. Mestichelli*

Ms. Mestichelli filed a complaint concerning Mr. Viladegut with Bar Counsel on February 14, 2018. On February 22, 2018, Bar Counsel wrote to Mr. Viladegut and requested a response by March 15, 2018. The hearing judge found that Mr. Viladegut failed to respond either to that letter or to three follow-up letters sent on April 5, May 30, and June 18, 2018.

On June 28, 2018, an investigator for Bar Counsel attempted to hand deliver copies of Bar Counsel's prior letters concerning the Mestichelli complaint to Mr. Viladegut at his home. The investigator spoke with Mr. Viladegut's father, who confirmed that Mr. Viladegut lived at that address and agreed to give the letters to him. Later that day, Mr. Viladegut left a voicemail for the investigator and stated he had not previously received the letters. He also asked for an extension of time until July 2, 2018, to respond to the complaint. He did, however, provide a brief response that same day by email. In the email he stated, among other things, that he had worked on Ms. Mestichelli's case "without payment." He also stated that he planned to collect all supporting information for his response to the complaint by July 1, 2018. The hearing judge found that Mr. Viladegut's statement that he was working on the case without payment to be "knowingly false and intentionally misleading." Mr. Viladegut did not provide any additional information in

16

response to the Mestichelli complaint by July 2, 2018. Bar Counsel wrote to Mr. Viladegut three more times on July 10, August 9, and September 5, 2018, requesting further information. The hearing judge found that Mr. Viladegut failed to respond to those letters.

*Complaint by AB's Mother*

AB's mother filed a complaint concerning Mr. Viladegut with Bar Counsel on June 29, 2018. On July 13, 2018, Bar Counsel wrote to Mr. Viladegut and requested a response to the complaint by July 26, 2018. The hearing judge found that Mr. Viladegut failed to respond either to that letter or to two follow-up letters sent on August 22 and September 28, 2018.

*Complaint by Ms. Garay*

Ms. Garay filed a complaint concerning Mr. Viladegut with Bar Counsel on July 9, 2018. On July 18, 2018, Bar Counsel wrote to Mr. Viladegut and requested a written response to the complaint by August 1, 2018. The hearing judge found that Mr. Viladegut failed to respond either to that letter or to two follow-up letters sent on August 20 and September 28, 2018.

*Acknowledgment of Complaints and Failure to Respond*

On November 11, 2018, an investigator for Bar Counsel delivered copies of Bar Counsel's letters regarding the complaints filed by Ms. Mestichelli, AB's mother, and Ms. Garay to Mr. Viladegut at his home. Mr. Viladegut responded by email, asking for an extension of time to respond until December 18, 2018. The hearing judge found that Mr. Viladegut did not thereafter respond to any of the complaints.

*Complaint by Mr. Lemus' Wife*

Mr. Lemus' wife filed a complaint concerning Mr. Viladegut with Bar Counsel on October 29, 2018.  On November 2, 2018, Bar Counsel wrote to Mr. Viladegut and requested a written response no later than November 21, 2018.  The hearing judge found that Mr. Viladegut failed to respond to that letter as well as two follow-up letters sent on January 2 and April 19, 2019.

On June 25, 2019, an investigator for Bar Counsel spoke with Mr. Viladegut by phone.  Mr. Viladegut said he could not recall if he had received Bar Counsel's prior letters. The investigator emailed the complaint of Mr. Lemus' wife as well as Bar Counsel's prior letters to Mr. Viladegut.  Mr. Viladegut said he would respond to Bar Counsel by July 5, 2019.  The hearing judge found that Mr. Viladegut failed to respond.

## II

## Violations of the Rules of Professional Conduct

The hearing judge concluded that Mr. Viladegut had committed all of the alleged violations pursued by Bar Counsel.[9]  Neither Bar Counsel nor Mr. Viladegut excepted to these conclusions.  We review the hearing judge's conclusions *de novo*.  Maryland Rule 19-741(b)(1).

---

[9] As noted earlier, Bar Counsel withdrew the alleged violation of former Maryland Rule 16-606.1 (attorney trust account recordkeeping).

18

*Failing to Meet Basic Standards of Representation*

The rules of professional conduct require a lawyer to: provide competent representation – *i.e.*, apply the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation (Rule 1.1); abide by direction received from the client (Rule 1.2); act with reasonable diligence and promptness in representing the client (Rule 1.3); and ensure that the client is reasonably informed about the status of the matter, comply with the client's reasonable requests for information, and explain a matter to the extent reasonably necessary for the client to make informed decisions (Rule 1.4). Conduct that violates one of these rules almost inevitably violates one or more of the others. Mr. Viladegut violated all four of these rules in his representation of Ms. Mestichelli and DM, AB, SG and AG, and Mr. Lemus.

Mr. Viladegut violated Rule 1.1 by failing to keep his clients notified of their court dates, failing to appear on their behalf, and failing to adequately pursue the appropriate relief. *Attorney Grievance Comm'n v. Aita*, 458 Md. 101, 132 (2018); *see also Attorney Grievance Comm'n v. Gage-Cohen*, 440 Md. 191, 197 (2014) (holding that an attorney, even if knowledgeable, provides "incompetent representation if [the attorney] is not thorough or is unprepared").

Mr. Viladegut failed to keep Ms. Mestichelli apprised of the status of her and DM's case, including court dates, and either failed to pursue relief altogether (in the case of DM's SIJS petition) or pursued it with insufficient thoroughness or preparation (in the case of Ms. Mestichelli's error-ridden asylum application). He also failed to appear on AB's behalf at the master calendar hearings on September 8, 2015, and May 25, 2016 – absences

19

that resulted in the immigration court ordering AB's removal. He failed to inform AB or her mother that AB had been ordered removed from the country the second time. He also delayed filing SG and AG's SIJS petitions in State court and failed to pursue them in a timely manner – dilatory conduct that resulted in their cases being dismissed by the Circuit Court. Further, he failed to inform Ms. Garay of the status of those petitions at any time. Lastly, after Mr. Lemus' wife retained him for her husband's immigration case, Mr. Viladegut failed to advance the case and deflected her inquiries about its progress with vague and inaccurate assurances.

Mr. Viladegut violated Rule 1.2 through much of the same conduct. Despite agreeing to pursue various avenues of relief that were the objectives of his representation of these clients, he failed to do so or to consult with the clients as to other options.

Mr. Viladegut violated Rule 1.3 by failing to make meaningful efforts to advance the cases of any of these clients. *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 554 (2011) (an attorney violates Rule 1.3 if the attorney does "nothing whatsoever to advance the client's cause or endeavor"). The record reflects multiple instances in which Mr. Viladegut failed to act for his client altogether, filed papers with erroneous information, or made filings that effectively did little or nothing to advance the client's case.

Mr. Viladegut violated Rule 1.4 by failing to adequately communicate with his clients and keep them informed of the status of their cases, even when they made repeated efforts to contact him. *See Attorney Grievance Comm'n v. Kwarteng*, 411 Md. 652, 658 (2009). Mr. Viladegut failed to relay negative developments in Ms. Mestichelli's, AB's,

20

and SG and AG's cases, and thereby prevented the clients from making informed decisions about how to pursue their cases. The failure to communicate with Mr. Lemus' wife, or the successor counsel she retained for her husband, despite their numerous attempts to contact him, impeded Mr. Lemus' efforts to remain in the United States and contributed to the ultimate decision to deport him.

*Violation Related to Termination of Representation*

Rule 1.16(d) requires a lawyer to protect a client's interests when terminating representation. It provides:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

An attorney violates Rule 1.16(d) when the attorney abandons representation of a client, fails to return records, and refuses to communicate with the client or successor counsel. *Attorney Grievance Comm'n v. Logan*, 390 Md. 313, 318-19 (2005). Mr. Viladegut violated Rule 1.16(d) in his representation of Ms. Mestichelli and DM, AB, SG and AG, and Mr. Lemus. Although Mr. Viladegut did not explicitly terminate his representation of any of these clients, he effectively abandoned each of them by ceasing to respond to their inquiries or to pursue their cases. In addition, he did not respond to successor counsel's requests for records or communicate generally with the clients or their successor counsel after abandoning the clients.

21

*Mishandling Money Matters*

Mr. Viladegut violated the rules of professional conduct, both in the amount of fees charged and in the disposition of the fee payments that he received.

Rule 1.5(a) provides, in pertinent part, that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The reasonableness of a fee is not measured solely at the outset of the representation; indeed, an otherwise reasonable fee can become unreasonable if the lawyer fails to earn it. *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012) (an otherwise reasonable fee became unreasonable because of the attorney's neglect of the client's matter and abandonment of the client's representation); *Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 732 (2011) (an otherwise reasonable fee became unreasonable because of the attorney's lack of competence and diligence in representing the client).

Mr. Viladegut violated Rule 1.5(a) in his representation of Ms. Mestichelli and DM, AB, SG and AG, and Mr. Lemus. As discussed above, Mr. Viladegut did not act with competence and diligence in representing these clients, misled them as to the status of their cases, and effectively abandoned them. The fees that Mr. Viladegut charged and received for each matter, whether or not they were reasonable for the representation he promised, became unreasonable when Mr. Viladegut failed to earn them by neglecting to perform the work necessary to advance the cases of those clients.

Rule 1.15(a) requires, in pertinent part, that a lawyer "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate

22

from the lawyer's own property." In particular, the rule requires that funds be kept in an attorney trust account. *See Attorney Grievance Comm'n v. Hamilton,* 444 Md. 163, 188 (2015). Rule 1.15(d) further requires that "a lawyer shall deliver promptly to the client … any funds or other property that the client … is entitled to receive and, upon request by the client …, shall render promptly a full accounting regarding such property."

Mr. Viladegut violated Rule 1.15 in his representation of Ms. Mestichelli and DM, AB, SG and AG, and Mr. Lemus. He failed to deposit and maintain funds for any of these clients in an attorney trust account until earned. He also failed to provide an invoice for his services or otherwise account for these funds. He did not respond to requests for the return of unearned portions of those funds and thus improperly retained those funds.

*Lack of Candor and Truthfulness with Bar Counsel and Others*

Mr. Viladegut violated several rules that prohibit lawyers from making statements or engaging in conduct involving falsehoods or deceit.

Rule 3.3 provides that "[a]n attorney shall not knowingly … make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to a tribunal by the attorney."

Mr. Viladegut violated Rule 3.3 in his representation of Ms. Mestichelli and DM, AB, and SG and AG. Mr. Viladegut's filings in his representation of Ms. Mestichelli and DM, as well as in his representation of AB, indicated that he was representing those clients *pro bono*, even though he had already accepted fees in both of those cases. He thus made false statements to the immigration court in those cases. He also told the immigration court in SG and AG's cases that their SIJS petitions had been "re-filed" in State court at a time

23

when in fact the petitions were filed for the first time that same day. Further, he misrepresented to the immigration court, on two later occasions, that the SIJS petitions were pending or awaiting a hearing date, when in fact they had been dismissed.

Rule 8.1 provides that "an attorney … in connection with a disciplinary matter, shall not … (a) knowingly make a false statement of material fact; or (b) … knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority …." Failure to respond to an inquiry in a timely manner may violate the rule. *See Attorney Grievance Comm'n v. Butler*, 441 Md. 352 (2015) (attorney violated Rule 8.1(b) by failing to respond to Bar Counsel for two months).

Mr. Viladegut violated Rule 8.1 with respect to Bar Counsel's inquiries about all of the complaints filed by his former clients or their family members. Bar Counsel wrote to Mr. Viladegut on at least 15 separate occasions requesting information regarding those complaints. Mr. Viladegut either failed to respond to these requests altogether or responded without providing any significant information. Mr. Viladegut also told Bar Counsel that he was representing Ms. Mestichelli "without payment," which the hearing judge found to be knowingly false and intentionally misleading.

Rule 8.4(c) provides that "[i]t is professional misconduct for an attorney to … engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Mr. Viladegut violated Rule 8.4(c) in his representation of Ms. Mestichelli and DM, AB, SG and AG, and Mr. Lemus. The false statements discussed above that violated Rule 3.3 and Rule 8.1 also violated Rule 8.4(c). In addition, the retention of unearned fees in many of these cases was a violation of Rule 8.4(c). *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 502-

3 (2002). Finally, Mr. Viladegut also engaged in dishonest conduct when he told Ms. Mestichelli that he would have to obtain a copy of DM's SIJS petition from the court when he had not filed such a petition and when he assured AB's mother that "all was well" with AB's case when in fact the immigration court had ordered AB to be removed from the country.

*General Violations*

Rule 8.4(a) provides that it is professional misconduct for a lawyer to violate a rule of professional conduct. Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

As indicated above, Mr. Viladegut violated several other rules of professional conduct. No further discussion is necessary to conclude that he violated Rule 8.4(a).

Mr. Viladegut violated Rule 8.4(d) in that his misconduct adversely affected the administration of justice in the immigration court and impaired public confidence in the legal system. *Attorney Grievance Comm'n v. Riely*, 471 Md. 458, 499 (2020) (misconduct is prejudicial to the administration of justice when it adversely affects the actual operation of the legal system); *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717 (2014) (conduct that impairs public confidence in the legal system is conduct prejudicial to the administration of justice).

Mr. Viladegut's failure to diligently pursue his clients' immigration matters and protect their interests resulted in multiple continuances, imperiled successor counsel's efforts to rectify his mistakes and, in the case of Mr. Lemus, may have contributed to Mr. Lemus' deportation. In addition, Mr. Viladegut's conduct towards his clients, various

25

tribunals, and the grievance process has the potential to impair public confidence in the legal system, which is also prejudicial to the administration of justice.[10]

### III

### Sanction

As this Court has frequently stated, the sanction in an attorney disciplinary proceeding is intended to protect the public from an attorney who fails to satisfy standards of professional conduct, to deter similar misconduct by other attorneys, and to maintain public confidence in the legal system. In devising the appropriate sanction, we consider not only the misconduct itself, but also any aggravating or mitigating factors present in the particular case. In doing so, we refer to a list of factors identified by the American Bar Association. *See Attorney Grievance Comm'n v. Blatt*, 463 Md. 679, 707-8 n.19 (2019) (listing aggravating and mitigating factors).

*Aggravating and Mitigating Factors*

The hearing judge found that seven aggravating factors were proved by clear and convincing evidence: *selfish motive*, *pattern of misconduct*, *multiple violations*, *bad faith obstruction*, *failure to acknowledge the wrongfulness of conduct*, *failure to make restitution*, and *vulnerable victims*. Those findings are amply supported by the record.

A *selfish motive* was established by the fact that Mr. Viladegut accepted fees he did not earn, failed to return unearned fees, made knowing and intentional misrepresentations

---

[10] Although the hearing judge did not relate his finding of inappropriate physical contact by Mr. Viladegut with Ms. Mestichelli specifically to the violation of this rule, in our view, that incident also supports the finding of a violation of Rule 8.4(d).

to the clients and their family members regarding the status of their cases, and abandoned his clients and their cases. He also engaged in a *pattern of misconduct* because he mishandled funds, made misrepresentations, and abandoned clients in several different matters. Inevitably, that misconduct involved *multiple violations* of the rules of professional conduct with respect to each client. He also *failed to make restitution* to any of his clients.

Mr. Viladegut also engaged in *bad faith obstruction* of Bar Counsel's investigation by ignoring numerous requests for information and, when he did communicate with Bar Counsel, by requesting an extension of time and promising a response that never came. He *never acknowledged the wrongfulness of his conduct* to either his clients or Bar Counsel.

Each of Mr. Viladegut's clients was a *vulnerable victim.* Each was at risk of removal from the United States, and thus a member of a marginalized group that may suffer severe consequences from attorney misconduct. *Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 352-53 (2016).

Mr. Viladegut bore the burden of proving any mitigating factors by a preponderance of the evidence. Maryland Rule 19-727(c). He did not participate in these proceedings and thus did not offer, much less prove, any mitigating factors. However, *absence of a prior disciplinary record* is a mitigating factor – a mirror image of the aggravating factor of *prior disciplinary offenses*. Given the absence of any evidence that Mr. Viladegut had incurred prior discipline, the hearing judge appropriately credited him with the mitigating factor, as do we.

27

*Discussion*

It is evident from the record of this case that a sanction of disbarment is necessary to protect other potential clients – especially vulnerable immigration clients – from the same neglect and mishandling of their cases, misappropriation of fees paid, and failure to cooperate with successor counsel. We hope that such a sanction will deter similar misconduct by other attorneys who may be called upon to represent similar clients.

Disbarment – the most serious sanction we can impose – is also necessary to protect public confidence in the legal system. Mr. Viladegut repeatedly made intentional misrepresentations to courts, clients, and Bar Counsel – a pattern of misconduct that cannot be countenanced if the legal system is to function properly.

We have disbarred attorneys for similar misconduct in the past. *E.g., Attorney Grievance Comm'n v. Blair*, 44 Md. 387 (2014) (disbarring attorney who abandoned client, retained unearned fees, and failed to participate in grievance proceedings); *Attorney Grievance Comm'n v. Kaufman*, 446 Md. 404 (2019) (disbarring attorney who abandoned client and failed to respond to Bar Counsel's requests for information).

For the reasons set forth above, we disbarred Mr. Viladegut.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/54a19agcn.pdf