*Attorney Grievance Commission of Maryland v. Mitzi Elaine Dailey*, AG No. 6, September Term, 2020.  Opinion by Getty, J.

ATTORNEY DISCIPLINE – SANCTION – DISBARMENT

Respondent, Mitzi Elaine Dailey, violated several provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and the Maryland Rules when she failed to maintain an attorney trust account, failed to act on her client's case, failed to communicate with her client, abandoned representation of her client, misappropriated client funds, and made intentional misrepresentations to Bar Counsel.

Ms. Dailey's conduct violated the following rules of professional conduct: 1.1 (Competence); 1.2 (Scope of Representation and Allocation of Authority Between Client and Attorney); 1.3 (Diligence); 1.4 (Communication); 1.5 (Fees); 1.15 (Safekeeping Property); 1.16 (Declining or Terminating Representation); 8.1 (Bar Admission and Disciplinary Matters); and 8.4 (Misconduct).  Ms. Dailey's conduct also violated the following Maryland Rules: 19-403 (Duty to Maintain Account); 19-404 (Trust Account—Required Deposits); and 19-407 (Attorney Trust Account Record-Keeping).  Disbarment is the appropriate sanction in case.

Circuit Court for Baltimore City
Case No. 24-C-20-001801
Argued: January 8, 2021

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 6

September Term, 2020

_____

ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND

V.

MITZI ELAINE DAILEY

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran

JJ.

_____

Opinion by Getty, J.

_____

Filed: July 23, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The leading rule for the lawyer, as for the [person] of every other calling, is diligence. Leave nothing for to-morrow which can be done to-day. Never let your correspondence fall behind.

Abraham Lincoln, *Collected Works of Abraham Lincoln*.[1]

Then a humble prairie lawyer, Abraham Lincoln shared this bit of wisdom to illustrate the habits every attorney and professional ought to practice. In his journal, President Lincoln stressed the importance of timeliness, of not taking client money until it has been earned, and of promoting honesty in the legal profession. *Id.* Today, Lincoln's adages continue to bear a unique importance, as they are practices which are not only recommended, but are required of all attorneys under the Maryland Attorneys' Rules of Professional Conduct.

Although we commend her considerable *pro bono* work, the Respondent in this case, Mitzi Elaine Dailey, neglected her client's case for nearly a year and failed to maintain communication with him. The fee Ms. Dailey received from her client related to this matter was never placed into an attorney trust account, nor was it ever returned to her client despite her failure to earn it. Throughout Bar Counsel's investigation, Ms. Dailey made several serious mistakes. Ms. Dailey failed to comply with Bar Counsel's investigation. Ms. Dailey failed to provide requested documents or attend her scheduled deposition and circuit court hearing. Finally, to compound all of this, Ms. Dailey made

---

[1] *Collected Works of Abraham Lincoln*, The Abraham Lincoln Association, https://quod.lib.umich.edu/l/lincoln/lincoln2/1:134.1?rgn=div2;view=fulltext [https://perma.cc/4P2P-8TX4].

false and misleading statements to Bar Counsel, including the fabrication of evidence to conceal her rule violations. Had Ms. Dailey been responsive, she may have avoided the most significant rule violations described below, and we may have reached a different conclusion. However, because of the serious misconduct outlined in the findings of the hearing judge, disbarment is the appropriate sanction for Ms. Dailey.

## BACKGROUND

### A.     *Procedural Context.*

On March 24, 2020, the Attorney Grievance Commission of Maryland (the "Commission") filed a Petition for Disciplinary or Remedial Action ("Petition") with this Court alleging that Ms. Dailey had violated the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and the Maryland Rules. *See* Md. Rule 19-721.

The Petition concerned Ms. Dailey's representation of and failure to communicate with her client, Geoffrey Wolst, for nearly a year, as well as her misrepresentations to Bar Counsel and failure to comply with discovery requests and the hearing process. Based on this misconduct, the Petition alleged that Ms. Dailey violated Rules: 1.1 (Competence); 1.2 (Scope of Representation and Allocation of Authority Between Client and Attorney); 1.3 (Diligence); 1.4 (Communication); 1.5 (Fees); 1.15 (Safekeeping Property); 1.16 (Declining or Terminating Representation); 8.1 (Bar Admission and Disciplinary Matters); and 8.4 (Misconduct).[2] The Petition also alleged violations of the following Maryland

_____

[2] "The Maryland Attorneys' Rules of Professional Conduct are codified as Maryland Rule 19-300.1 *et seq*. In an effort to enhance readability, we use abbreviated references to the prior codifications of these rules, which are consistent with the ABA Model Rules on which they are based (*e.g.,* Maryland Rule 19-301.1 will be referred to as Rule 1.1)." *Attorney*

Rules: 19-403 (Duty to Maintain Account); 19-404 (Trust Account—Required Deposits); and 19-407 (Attorney Trust Account Record-Keeping).

We designated Judge Jeffrey M. Geller (the "hearing judge") of the Circuit Court for Baltimore City by Order dated March 27, 2020, to conduct an evidentiary hearing concerning the alleged violations and to provide findings of fact and recommend conclusions of law. *See* Md. Rule 19-722(a). Ms. Dailey was personally served with process on April 24, 2020, and filed her Answer on May 11, 2020. Ms. Dailey filed a Writ of Mandamus to this Court requesting a stay of proceedings on July 13, 2020.[3] We denied Ms. Dailey's petition for relief in an Order dated July 27, 2020.

On August 4, 2020, the circuit court held a pretrial hearing remotely via Skype. Ms. Dailey failed to appear. The evidentiary hearing was also held remotely via Skype on August 11, 2020. Although Ms. Dailey was sent an email and hard copy of the Scheduling Order, she did not attend the virtual hearing.[4] The hearing judge's findings of fact were filed in this Court on September 22, 2020. Because of Ms. Dailey's failure to respond to Bar Counsel's request for admissions of facts within 30 days as described *infra*, the hearing

---

*Grievance Comm'n v. Portillo*, 2021 WL 2154205, at *1 n.1 (2021) (citing ABA Compendium of Professional Responsibility Rules and Standards (Am. Bar Ass'n 2017)).

[3] An initial writ filed on July 9, 2020, was rejected by the Clerk of this Court for failure to file the Writ of Mandamus as a separate action and for insufficient service.

[4] The hearing judge noted that there was a person present at the Skype hearing who was identified on the screen only as "Unidentified Caller." The court asked several times if the person was, in fact, Ms. Dailey, and invited her to present mitigation if it was, but the court received no response. The only individuals the court shared the Skype link with were Bar Counsel, the hearing judge's staff, and Ms. Dailey.

3

judge deemed the requests admitted pursuant to Md. Rule 2-424. Bar Counsel filed a recommendation for sanction with this Court on October 6, 2020. Ms. Dailey filed exceptions to the hearing judge's findings of fact and conclusions of law on October 7, 2020. This Court heard oral argument in this matter on January 8, 2021.

## B.    *Factual Findings.*

We begin by summarizing the hearing judge's factual findings. Ms. Dailey was admitted to the Maryland Bar on December 13, 1994. Since then, Ms. Dailey has maintained an office for the practice of law in the City of Baltimore, primarily providing low-cost services to indigent clients. Ms. Dailey's clients were often referred to her by the Maryland Volunteer Lawyers Service or the Civil Justice Network.

### 1.    *Representation of Geoffrey Wolst.*

On July 1, 2017, Norma J. Wolst—a resident of Baltimore City—died intestate. Ms. Wolst was survived by her children, Geoffrey Wolst and Norva Countess. Mr. Wolst was referred to Ms. Dailey in early July 2017 by the Civil Justice Network to seek legal advice concerning the administration of his mother's estate (the "estate"). After initially speaking via telephone, Mr. Wolst and Ms. Dailey met in person, on July 18, 2017. At that meeting, Mr. Wolst retained Ms. Dailey to represent him in his capacity as the personal representative of the estate, and Mr. Wolst signed a legal representation agreement which required a retainer payment of $1,500 to be billed against at an hourly rate of $150.

On August 22, 2017, Mr. Wolst paid Ms. Dailey the $1,500 retainer. On the receipt given to Mr. Wolst, Ms. Dailey noted that it was for the "[e]state filing fee and legal fees." Ms. Dailey deposited the funds into her operating account instead of into an attorney trust

4

account. The hearing judge found that Ms. Dailey failed to maintain an attorney trust account for her solo practice, and that Ms. Dailey did not obtain Mr. Wolst's informed consent to deposit this payment into an operating account that was not an attorney trust account.

Ms. Dailey prepared the appropriate estate documents, including a Regular Estate Petition for Administration, Schedule A ("Estimated Value of Estate and Unsecured Debts"), and List of Interested Persons. Mr. Wolst signed these documents on August 22, 2017. However, Ms. Dailey never filed the documents with the Office of the Register of Wills of Baltimore City. Ms. Dailey informed Mr. Wolst that he was required to post a bond, the amount of which would be based on the value of the estate. Ms. Dailey also informed Mr. Wolst that this requirement could be waived if Ms. Countess consented to Mr. Wolst's appointment as personal representative of their mother's estate. Mr. Wolst unsuccessfully tried to obtain Ms. Countess' consent in September 2017. On September 19, 2017, Ms. Dailey informed her client that a $200,000 bond would be necessary, which could be purchased for $1,275.

On November 9, 2017, Mr. Wolst paid Ms. Dailey $1,275 in cash for the bond purchase. The receipt given to Mr. Wolst stated that the payment was the "fee for bond." Ms. Dailey did not place the $1,275 into an attorney trust account, but instead deposited the funds into her operating account. Ms. Dailey never received Mr. Wolst's informed consent to place these funds into an operating account that was not an attorney trust account. Further, Ms. Dailey never purchased a bond with the funds she received and instead misappropriated the funds for her own use.

5

Ms. Dailey had Mr. Wolst sign an updated Schedule A on November 9, 2017. Ms. Dailey never filed the updated document with the Register of Wills for Baltimore City. From December 2017 to January 2018, Mr. Wolst reached out to Ms. Dailey requesting updates on the status of his case. Ms. Dailey did not return his calls until January 2, 2018. After the January 2018 call, Ms. Dailey did not communicate with Mr. Wolst again for nearly twelve months. During this time, Mr. Wolst was unaware of the fact that Ms. Dailey had failed to file any of the estate documents, failed to procure a bond, and failed to properly maintain the funds he had given her. Despite her lack of communication and failure to diligently advance Mr. Wolst's case, Ms. Dailey did not return any portion of the $1,500 retainer for legal fees, or the expense for the $1,275 bond.

### 2. *Bar Counsel's Investigation.*

Mr. Wolst filed a complaint with the Attorney Grievance Commission on November 18, 2018. Mr. Wolst explained to Bar Counsel that he was unaware of the status of his case, as he had not heard from Ms. Dailey in nearly a year. Bar Counsel sent Ms. Dailey a copy of the complaint on December 4, 2018. After receiving this complaint, Ms. Dailey contacted Mr. Wolst by telephone on December 10, 2018.

Bar Counsel requested that Ms. Dailey provide a written response to the allegations in the complaint. In her January 4, 2019, response, Ms. Dailey misrepresented to Bar Counsel that she had been attempting to "move the case along" but Mr. Wolst had failed to return her calls. According to phone records submitted by Ms. Dailey, she had placed only one call to her client on January 2, 2018. Moreover, the hearing judge found that Ms. Dailey's claim that Mr. Wolst had failed to return her alleged calls was knowingly and

6

intentionally false and was made to conceal the fact that she had abandoned her representation of Mr. Wolst.

Ms. Dailey failed to cooperate with Bar Counsel throughout the discovery process. On August 12, 2019, Bar Counsel requested that Ms. Dailey send phone records documenting all calls with Mr. Wolst from July 1, 2017, to that date. To prevent any contradiction with her earlier statements to Bar Counsel concerning Mr. Wolst's lack of communication with her, Ms. Dailey only provided telephone records from December 19, 2017 to January 18, 2018. Despite repeated requests for the full phone records, Ms. Dailey failed to provide records for the requested dates.

In addition to phone records, Ms. Dailey also did not provide requested trust account statements and information to Bar Counsel. On February 13, 2019, Bar Counsel requested records from Ms. Dailey's trust account evidencing the receipt and maintenance of Mr. Wolst's $1,500 and $1,275 payments. Ms. Dailey failed to provide the requested bank account records or information in her March 6, 2019, response, or in her later response to a second request by Bar Counsel. Nor did Ms. Dailey alternatively inform Bar Counsel that such records did not exist. Bar Counsel also requested a response to Mr. Wolst's allegations that Ms. Dailey had failed to respond to his calls and text messages. In her March 6 response, Ms. Dailey falsely claimed that Mr. Wolst had failed to communicate with her and that he had changed his contact information without notifying her. Ms. Dailey further asserted that she had taken "all actions in [her] power" to advance Mr. Wolst's case, even though she had failed to file any documents or contact him for eleven months from early January to late December 2018.

7

On April 9, 2019, Bar Counsel again requested Ms. Dailey's trust account records including deposit slips, canceled checks, and other disbursement records, as well as Mr. Wolst's client file. Ms. Dailey failed to provide the requested documents in her April 23 response. Bar Counsel sent a third request to Ms. Dailey for her trust account records documenting receipt and expenditure of Mr. Wolst's funds on April 29, 2019. On May 24, 2019, Ms. Dailey responded without sending the requested documents, instead asserting that the fees received "were both billed for legal services as requested and provided to Geoffrey Wolst, in accordance with the Legal Representation Agreement that he reviewed and signed on July 18, 2017 (with no legal or any fees paid on that date)." The hearing judge found that this statement was knowingly and intentionally false, as the receipts for the $1,500 and $1,275 payments stated that they were for Ms. Dailey's retainer and the bond, respectively. The necessary estate documents were never filed, and the bond was never purchased. Thus, the fees were never earned.

In her May 24, 2019, response to Bar Counsel, Ms. Dailey included an invoice dated April 23, 2019, which purported that Mr. Wolst had accumulated $1,650 in legal fees as of August 22, 2017. This invoice included false time entries intended to conceal the fact that Ms. Dailey had not deposited the payments into—and indeed failed to maintain—an attorney trust account. Although the invoice indicated that Mr. Wolst owed $1,650 in legal fees by August 22, 2017, that information was not shared with him when he made his $1,500 retainer payment. Ms. Dailey even indicated on that day that a portion of the payment would be used for the estate filing fee. Moreover, Ms. Dailey fabricated four two-hour meetings on July 18, August 22, September 7, and November 9, 2017, on her invoice.

8

The duration of these meeting times had been edited and intentionally inflated by Ms. Dailey to support her claim that Mr. Wolst owed $1,500 in legal fees on August 22, and $1,275 by November 9, 2017. Ms. Dailey's invoice also memorialized a 1.6-hour meeting regarding the procurement of a bond on January 2, 2018, although the phone records indicate that this meeting lasted only 66 minutes (1.1 hours). The invoice entry summarizing this meeting was also fabricated, as Mr. Wolst had already requested the procurement of a bond before this phone call. Additionally, this invoice entry is inconsistent with Ms. Dailey's exceptions, described *infra*, where she claims that her January 2, 2018, conversation was regarding a separate matter where she was advising Mr. Wolst on criminal charges filed against him.

On August 12, 2019, Bar Counsel requested that Ms. Dailey schedule a statement under oath with their office. In her reply, Ms. Dailey requested a date after October 10, 2019. Bar Counsel responded with three proposed dates after October 10, 2019. However, Ms. Dailey failed to respond to any overtures by Bar Counsel to communicate. On September 11, 2019, Bar Counsel issued a subpoena directing Ms. Dailey to appear in person on October 16, 2019, to respond to questions under oath and to produce bank records.

On September 28, 2019, a process server went to Ms. Dailey's office at One East Chase Street, Suite 1139, Baltimore, Maryland 21202. A woman named "Mitzi" answered the intercom but declined to accept the package when the server asked her to come to the door. Ms. Dailey evaded service of the subpoena, insisting that the process server had "the wrong place and wrong person." Bar Counsel continued reaching out to Ms. Dailey,

leaving voicemails, and sending emails and letters. However, she failed to respond to any correspondence. Additionally, Ms. Dailey failed to attend her statement under oath on October 16, 2019, or contact Bar Counsel to explain her failure to appear.

### 3. *Circuit Court Proceedings.*

Ms. Dailey continued her obstructive conduct in the preliminary proceedings before the Circuit Court for Baltimore City. Ms. Dailey did not respond to scheduling requests and did not accept Skype calendar invitations from the court. Bar Counsel filed a Motion for Sanctions accompanied by a Motion to Shorten Time on June 23, 2020, because of Ms. Dailey's failure to comply with discovery requests. The Motion to Shorten Time was granted on June 30, 2020, limiting Ms. Dailey's deadline to respond to the discovery motion or to file opposition to July 7. Ms. Dailey failed to respond by that date, and the hearing judge indicated in a further email that the court would rule on the discovery motion on July 9 if no response were received from her. Ms. Dailey failed to respond to the sanctions motion, instead filing a Writ of Mandamus to this Court to stay proceedings.

The hearing judge gave Ms. Dailey a final opportunity to comply with discovery, ordering that she provide responses to interrogatories and produce documents by July 15, 2020, and that she attend her deposition on July 21. Ms. Dailey failed to produce discovery or attend her deposition. On August 4, 2020, because of Ms. Dailey's continued failure to comply with discovery, the hearing judge granted Bar Counsel's Motion for Sanctions. The court ordered that Ms. Dailey's Answer to the Petition be stricken and that the averments in the Petition be deemed admitted. Ms. Dailey was precluded from calling witnesses at trial, presenting documents, or presenting any evidence or testimony which

10

contradicted the averments in the Petition.  Ms. Dailey's testimony would be limited only to proposed mitigation.

## STANDARD OF REVIEW

In an attorney discipline proceeding, this Court reviews a hearing judge's findings of fact for clear error and reviews a hearing judge's conclusions of law without deference. *See* Md. Rule 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 332 (2020) (citation omitted) ("[T]his Court reviews for clear error a hearing judge's findings of fact . . . ."); Md. Rule 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated a rule of professional conduct.  *See* Md. Rule 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").  Where a party fails to respond to discovery, a hearing judge may grant a motion for sanctions under Md. Rule 2-432(a) and enter "[a]n order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order[.]"  Md. Rule 2-433(a)(1).

Either party may file "exceptions to the findings and conclusions of the hearing judge[.]"  Md. Rule 19-728(b).  If a party excepts to the hearing judge's findings, this Court "shall determine whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c)."  Md. Rule 19-741(b)(2)(B).  "We may confine our review

11

to the findings of fact challenged by the exceptions, mindful though, that the hearing judge is afforded due regard to assess the credibility of witnesses." *Smith-Scott*, 469 Md. at 332 (citation omitted). This Court will not disturb the hearing judge's findings "where 'there is any competent evidence to support the' finding of fact." *Id.* (quoting *Attorney Grievance Comm'n v. Donnelly*, 458 Md. 237, 276 (2018)). Therefore, "[i]f the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Id.* at 333 (quoting *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 419 (2009)).

## DISCUSSION

Bar Counsel does not except to any of the hearing judge's findings of fact or conclusions of law. Ms. Dailey notes forty exceptions to both the hearing judge's findings of fact and conclusions of law. We address these below.

### A. *Exceptions to the Hearing Judge's Findings of Fact.*

Ms. Dailey takes exception to several of the hearing judge's findings of fact, including: (1) that the representation of Mr. Wolst was primarily for providing legal advice, specifically regarding his rights as compared to those of his niece who was "the only surviving relative that the decedent designated to receive" funds from a Maryland Employees Credit Union account; (2) that no evidence was presented showing that Ms. Dailey had failed to communicate with Mr. Wolst for a year; (3) that Ms. Dailey had completed substantial work on Mr. Wolst's case and that she was still working on procuring the bond at the time Mr. Wolst filed the complaint; (4) that Mr. Wolst had changed his

phone number and never informed her of the new number; and (5) that the process server had been misdirected to a nail salon, not her law office.

"A hearing judge is given 'a great deal of discretion in determining which evidence to rely upon.'" *Attorney Grievance Comm'n v. Johnson*, 472 Md. 491, 527 (2021) (quoting *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 195 (2020)). "As far as what evidence a hearing judge must rely upon to reach his or her conclusions, we have said that the hearing judge 'may "pick and choose" what evidence to believe.'" *Attorney Grievance Comm'n v. Woolery*, 462 Md. 209, 230 (2018) (quoting *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 627 (2013)). Here, Ms. Dailey failed to present testimony at her circuit court hearing. In fact, Ms. Dailey was precluded from providing testimony or from contradicting the averments in the petition because of her repeated failure to comply with Bar Counsel's discovery requests. Under Md. Rule 2-433(a), a hearing judge may grant such an order for a failure to comply with discovery:

> For Certain Failures of Discovery. Upon a motion filed under Rule 2-432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:
>
> (1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;
>
> (2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or
>
> (3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party

13

against the failing party if the court is satisfied that it has personal jurisdiction over that party.

Md. Rule 2-433(a).

As before mentioned, this Court will not disturb the hearing judge's findings "where 'there is any competent evidence to support the' finding of fact." *Johnson*, 472 Md. at 526 (quoting *Donnelly*, 458 Md. at 276). "Accordingly, because we decline to overrule a hearing judge's findings of fact absent clear error," we overrule Ms. Dailey's "generalized exceptions as to what findings of fact the hearing [judge] failed to make." *Smith-Scott*, 469 Md. at 334 (quoting *Woolery*, 462 Md. at 230). Because there is competent evidence in the record to support the hearing judge's findings of fact, we decline to uphold Ms. Dailey's exceptions.

**B.      *Conclusions of Law.***

The hearing judge concluded that Ms. Dailey violated Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 8.1, and 8.4. The hearing judge also concluded that Ms. Dailey violated Maryland Rules 19-403, 19-404, and 19-407. Bar Counsel does not except to the hearing judge's conclusions of law. Ms. Dailey excepts to each of the hearing judge's conclusions of law in this case. Based upon our independent review of the record, we uphold the hearing judge's conclusions of law.[5]

---

[5] Ms. Dailey asserts in her first exception that Bar Counsel's filing of this disciplinary action on March 24, 2020, violated this Court's Order regarding the closure of courts due to the COVID-19 pandemic. We disagree. In our Order dated March 12, 2020, this Court made clear that the Judiciary's objective was to continue providing access to justice to the extent possible and practicable. *In the Court of Appeals of Maryland Administrative Order on the Statewide Suspension of Non-essential Judicial Activities Due to Emergency*, Maryland          Judiciary,          https://www.courts.state.md.us/sites/default/files/admin-

### 1. *Rule 1.1 (Competence).*

Rule 1.1 requires that an attorney "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." "[T]he failure to pursue a claim after [initiating representation] demonstrates not only incompetence, but also insufficient diligence." *Attorney Grievance Comm'n v. Sanderson*, 465 Md. 1, 38 (2019) (quoting *Attorney Grievance Comm'n v. Lang*, 461 Md. 1, 44 (2018)); *see also Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 222–23 (2012) (concluding that the failure to take fundamental steps to further a client's case is a violation of Rule 1.1). "[A]n attorney 'demonstrates incompetence, and therefore violates Rule [1.1], when he [or she] fails to properly maintain his [or her] client trust account.'" *Johnson*, 472 Md. at 532 (some alteration in original) (quoting *Attorney Grievance Comm'n v. Frank*, 470 Md. 699, 735 (2020)). Finally, an attorney's "failure to maintain [client] funds in a proper trust account demonstrates incompetence." *Smith-Scott*, 469 Md. at 337 (quoting *Attorney Grievance Comm'n v. Maignan*, 390 Md. 287, 296–97 (2005)).

Ms. Dailey demonstrated incompetence by failing to file the necessary estate forms even after the documents were signed by Mr. Wolst. Moreover, Ms. Dailey failed to communicate with her client for eleven months, despite her unsupported assertion that she

orders/20200312suspensionnonessential.pdf [https://perma.cc/2FVE-8VRH]. This included the use of remote hearings and electronic filings, and the continued operation of certain judicial facilities in a limited capacity. The filing of this action by the Attorney Grievance Commission was in accordance with this Order and furthered the objective to promote the efficient process of the courts during the period of emergency.

attempted to contact Mr. Wolst but was unable to do so because he had changed his contact information. Further, Ms. Dailey violated Rule 1.1 by failing to properly maintain the funds Mr. Wolst gave to her in an attorney trust account, instead placing the $1,500 and $1,275 payments into her operating account. In fact, the hearing judge found that Ms. Dailey never had an attorney trust account at all. Based on our independent review of the record, we hold that Ms. Dailey violated Rule 1.1 by failing to act on Mr. Wolst's case, abandoning her client, and by improperly handling client funds.

### 2. *Rule 1.2 (Scope of Representation).*

Rule 1.2(a) states:

> Subject to sections (c) and (d) of this Rule, an attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation. An attorney shall abide by a client's decision whether to settle a matter. In a criminal case, the attorney shall abide by the client's decision, after consultation with the attorney, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

"An attorney's failure to prosecute her client's case, combined with a failure to communicate with the client about the status of the case, may constitute a violation of this rule." *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 697 (2019) (quoting *Attorney Grievance Comm'n v. Bellamy*, 453 Md. 377, 394 (2017)). The hearing judge found that Ms. Dailey violated Rule 1.2 because she was retained by Mr. Wolst for the purpose of filing documents for his mother's estate but failed to do so. Although Ms. Dailey agreed to complete this objective of the representation, she accepted Mr. Wolst's payment and failed to prepare the necessary paperwork. We therefore agree that Ms.

16

Dailey's failure to take further action on Mr. Wolst's case constitutes a violation of Rule 1.2. Moreover, Ms. Dailey's failure to communicate with her client about the status of the case for nearly all of 2018, despite accepting the fee, leads us to conclude that Ms. Dailey violated Rule 1.2.

### 3. *Rule 1.3 (Diligence).*

Rule 1.3 mandates that "[a]n attorney shall act with reasonable diligence and promptness in representing a client." This Rule "can be violated by failing to advance the client's cause or endeavor; failing to investigate a client's matter; and repeatedly failing to return phone calls, respond to letters, or provide an accounting for earned fees[.]" *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 208 (2020) (quoting *Edwards*, 462 Md. at 699) (alteration in original). The same justifications for finding a violation of Rule 1.1 may also support a Rule 1.3 violation. *Id.* at 209.

The hearing judge found that Ms. Dailey's conduct in relation to Rules 1.1 and 1.2, *supra*, and Rule 1.4, *infra*, also violated Rule 1.3. Ms. Dailey excepts to these conclusions, asserting that she diligently pursued the procurement of a bond[6] and that she only failed to

---

[6] Securing a surety bond in a timely fashion is a routine matter in a law firm that practices estate administration. A personal representative must execute a bond to the State of Maryland unless expressly excused by the will of the decedent or by the written waiver of all interested persons. Md. Code (1974, 2017 Repl. Vol.), Estates & Trusts ("ET") § 6-102(a). A "surety on the bond may be a corporation authorized to act as a surety in the State or one or more individuals approved by the register." Md. Code (1974, 2017 Repl. Vol.), ET § 6-102(d)(1). The bond of a personal representative "protects all interested persons, including creditors, the state (for taxes and fees), heirs and legatees." *Williamson v. Nat'l Grange*, 166 Md. App. 150, 161 (2005) (quoting Allan J. Gibber, *Gibber on Estate Administration* § 2.33 (4th ed. 2005)). An orphans' court or register of wills may not issue testamentary or administration letters until the bond is filed. *State v. Talbott*, 148 Md. 70,

communicate with Mr. Wolst because he had changed his contact information. Based on our independent review of the record, we reject Ms. Dailey's exceptions and conclude that there is sufficient evidence to support the hearing judge's conclusions as to Rule 1.3.

### 4. Rule 1.4 (Communication).

Rule 1.4 provides:

(a) An attorney shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0(f)(1.0), is required by these Rules;
> (2) keep the client reasonably informed about the status of the matter;
> (3) promptly comply with reasonable requests for information; and
> (4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Under this Rule, attorneys are required "to communicate with their clients and keep them reasonably informed of the status of their legal matters." *Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 349 (2020). "A violation of this Rule occurs when a client repeatedly attempts to contact the attorney, but the attorney fails to respond." *Smith-Scott*, 469 Md. at 341 (citing *Planta*, 467 Md. at 349). Ms. Dailey violated this Rule by failing to adequately communicate with Mr. Wolst and therefore failing to inform him of the status of his case, even when Mr. Wolst made repeated efforts to contact Ms. Dailey.

---

80 (1925). As a result, the process of obtaining a surety bond is necessarily streamlined to promote the efficiency of the estate administration process.

*See Attorney Grievance Comm'n v. Viladegut*, 473 Md. 38, 60 (2021) (citing *Attorney Grievance Comm'n v. Kwarteng*, 411 Md. 652, 658 (2009)).

The hearing judge found that Ms. Dailey violated Rule 1.4(a) by failing to keep Mr. Wolst reasonably informed about the status of his case, and by failing to respond to his calls and text messages for over eleven months. Further, the hearing judge found that Ms. Dailey violated Rule 1.4(b) when she failed to inform her client that she neither purchased a personal representative bond nor filed the appropriate estate documents. Because of Ms. Dailey's failure to communicate that she had not taken action to advance Mr. Wolst's case, Mr. Wolst was unable to make informed decisions regarding his mother's estate. After our independent review of the record, we agree that Ms. Dailey's failure to communicate with her client or reveal that she had not taken any action to advance Mr. Wolst's case constitutes a violation of Rules 1.4(a) and (b).

### 5.     *Rule 1.5 (Fees).*

Rule 1.5(a) provides in pertinent part: "[a]n attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." "A fee that is reasonable at the outset of representation can become unreasonable if the attorney fails to earn it." *Attorney Grievance Comm'n v. Davenport*, 472 Md. 20, 33 (2021); *see, e.g.*, *Garrett*, 427 Md. at 224 (concluding that a fee became unreasonable due to the attorney's neglect of the matter and abandonment of representation); *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 187 (2015) ("Even if a fee is reasonable on its face at the outset of representation, if the attorney fails thereafter to perform to any meaningful

19

degree the legal services for which the fee was set initially, the fee becomes unreasonable with the benefit of hindsight.").

"Although the fee may have initially been reasonable at the outset of representation, we agree that the fee became unreasonable considering the minimal, or nonexistent, work that [Ms. Dailey] performed for [her] client." *Davenport*, 472 Md. at 33. In this case, although the fee may have been reasonable at the outset of representation, the fees charged became unreasonable when Ms. Dailey failed to file the signed estate documents and abandoned Mr. Wolst without informing him of the status of his case. Thus, we find that Ms. Dailey violated Rule 1.5(a).

### 6. *Rule 1.15 (Safekeeping Property).*

Under Rule 1.15:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

Upon our independent review of the record, we agree with the hearing judge's conclusions that Ms. Dailey failed to maintain an attorney trust account and failed to properly maintain the funds given to her by Mr. Wolst until they were earned. We reject Ms. Dailey's exceptions that the two payments were for fees she had already earned. We uphold the finding of the hearing judge that the April 23, 2019, invoice submitted by Ms. Dailey provided false entries to conceal her misappropriation of Mr. Wolst's funds. This finding is supported by the uncontroverted evidence that, on the receipt provided to Mr. Wolst, Ms. Dailey acknowledged that the $1,500 payment on August 22, 2017, was an initial retainer fee, and that the $1,275 payment on November 9, 2017, was the cost for obtaining the bond. Because Ms. Dailey had not earned the retainer fee by August 22, and because she never purchased the bond, she was required to maintain these funds in her attorney trust account. A failure to do so is a violation of Rule 1.15(a) and (c).

### 7. *Rule 1.16 (Declining or Terminating Representation).*

Rule 1.16(d) states:

Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

We adopt the finding of the hearing judge and hold that Ms. Dailey abandoned Mr. Wolst's case, effectively terminating the representation without giving her client notice. Having reviewed the uncontroverted evidence in the record, we overrule Ms. Dailey's exceptions that she continued to advance Mr. Wolst's case and did not abandon her client.

21

Ms. Dailey additionally violated Rule 1.16(d) when she failed to return unearned fees and expenses.

### 8. *Rule 8.1 (Bar Admission and Disciplinary Matters).*

Rule 8.1 provides, in pertinent part:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6.

"Rule 8.1(b) compels attorneys to demonstrate candor and cooperation with the disciplinary authorities of the Bar." *Smith-Scott*, 469 Md. at 358 (quoting *Planta*, 467 Md. at 356). An attorney violates Rule 8.1(b) if they do not "answer timely requests from the Attorney Grievance Commission regarding a complaint in a potential disciplinary matter." *Hamilton*, 444 Md. at 192 (quoting *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 323 (2012)).

The hearing judge concluded that Ms. Dailey violated Rule 8.1(a). The court based its conclusion on its finding that Ms. Dailey intentionally misrepresented that she was unable to advance Mr. Wolst's case because he refused to return her calls, did not communicate with her, and changed his contact information without notice. Ms. Dailey also falsely stated that the $1,500 and $1,275 fees paid by Mr. Wolst were for legal work performed on his case. In response to a request by Bar Counsel, Ms. Dailey submitted an

invoice dated April 23, 2019, which included entries for meetings lasting two hours or more on July 18, 2017, August 22, 2017, September 7, 2017, and November 9, 2017. The meeting times were inflated by Ms. Dailey to support her false claims that she had earned Mr. Wolst's $1,500 payment by August 22, 2017, and that she had earned Mr. Wolst's $1,275 payment by November 9, 2017. We agree that these intentional misrepresentations by Ms. Dailey were made to avoid revealing to Bar Counsel that she failed to maintain an attorney trust account. The invoice also contained an entry for a 1.6-hour telephone call on January 2, 2018, which Ms. Dailey claims was to discuss the need to obtain a bond. Based on our independent review of the record, we overrule Ms. Dailey's exception and conclude that this telephone call was instead a 1.1-hour call for the purpose of discussing a separate, criminal matter. Therefore, this entry was fraudulent in both subject matter and length.

We find that Ms. Dailey violated Rule 8.1(b) by failing to respond in any manner to Bar Counsel's repeated requests for information regarding an attorney trust account on February 13, April 9, April 29, and June 25, 2019. Ms. Dailey further violated Rule 8.1(b) by failing to provide dates for her statement under oath, by evading service of the subpoena for her statement under oath, and by failing to appear for her statement under oath and deposition.

### 9. *Rule 8.4 (Misconduct).*

Rule 8.4 provides, in pertinent part:

It is professional misconduct for an attorney to:

(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

* * *

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney violates Rule 8.4(a) when they violate other Rules of Professional Conduct. *E.g., Attorney Grievance Comm'n v. Karambelas*, 473 Md. 134, 167 (2021); *Attorney Grievance Comm'n v. Keating*, 471 Md. 614, 650 (2020) (reaffirming the "well-established principle that an attorney violates Maryland Rule 19-308.4(a) when she or he violates other professional rules"). Based on our conclusion that Ms. Dailey has violated several other rules, we also conclude that she has violated Rule 8.4(a).

"Under Rule 8.4(c), '[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.'" *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 39 (2014) (alteration in original). Rule 8.4(c) therefore encompasses a "broad universe of mis-behavior." *Id.* "[W]e have previously applied the 'general proposition that a violation of Rule 8.1(a) also violates Rule 8.4(c), as a knowingly false statement to Bar Counsel qualifies as at least conduct involving misrepresentation.'" *Miller*, 467 Md. at 222 (quoting *Attorney Grievance Comm'n v. Singh*, 464 Md. 645, 677 (2019)). As described *supra* in the discussion of Rule 8.1, Ms. Dailey committed several deceitful acts with the intent to misrepresent facts to Bar Counsel in order to conceal her

24

failure to maintain an attorney trust account and her misappropriation of client funds. We therefore conclude that Ms. Dailey violated Rule 8.4(c).

"[C]onduct prejudicial to the administration of justice," in violation of Rule 8.4(d), occurs when an attorney acts in a way that "reflects negatively on the legal profession and sets a bad example for the public at large[.]" *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 22 (2007). Pertinent to this case, "misconduct that constitutes a violation of [Rule] 8.4(c) may also violate [Rule] 8.4(d)." *Lang*, 461 Md. at 66 (citing *Attorney Grievance Comm'n v. Payer*, 425 Md. 78, 95 (2012)). Ms. Dailey's acts of dishonesty and incompetence, including intentional representations to Bar Counsel, the abandonment of Mr. Wolst's legal representation, and the failure to return unearned client fees all reflect negatively on the legal profession and set a poor example for the public at large, thereby constituting a violation of Rule 8.4(d).

Additionally, we have found that "an attorney violate[s] Rule 8.4(d) by failing to keep his [or her] client advised of the status of the representation . . . 'which tends to bring the legal profession into disrepute.'" *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 175 (2010) (quoting *Attorney Grievance Comm'n v. Rose*, 391 Md. 101, 111 (2006)). We conclude that Ms. Dailey also violated Rule 8.4(d) by failing to keep Mr. Wolst advised on the status of his case despite his calls and requests for updates.

### 10. *Maryland Rule 19-403 (Duty to Maintain Account).*

Rule 19-403 provides:

An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons. The account or accounts shall be

maintained in this State, in the District of Columbia, or in a state contiguous to this State, and shall be with an approved financial institution. Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person.

Ms. Dailey violated Rule 19-403 through her failure to maintain an attorney trust account. Despite multiple requests for bank records by Bar Counsel, Ms. Dailey failed to produce any relevant documents to show that she maintained an attorney trust account.

### 11. *Maryland Rule 19-404 (Trust Account – Required Deposits).*

Rule 19-404 states:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

Ms. Dailey was required to deposit and maintain Mr. Wolst's funds in an attorney trust account under Rule 19-404. We find that the fee given to Ms. Dailey by her client was not deposited in a trust account and, despite Ms. Dailey's exceptions to the contrary, the fee was never earned because she failed to provide the estate administration services for Mr. Wolst as outlined in the legal representation agreement. We find that Ms. Dailey failed to properly secure Mr. Wolst's funds until they were earned, and accordingly find that she violated this Rule.

26

### 12.    *Maryland Rule 19-407 (Attorney Trust Account Record Keeping).*

Rule 19-407 reads, in pertinent part:

(a) Creation of Records.   The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons: (1) Attorney Trust Account Identification.  An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.  (2) Deposits and Disbursements.  A record for each account that chronologically shows all deposits and disbursements . . . .  (3) Client Matter Records.  A record for each client matter in which the attorney receives funds in trust . . . .  (4) Record of Funds of the Attorney.  A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 19-408(b).

(b) Monthly Reconciliation.  An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by Rule 19-408(b), and the adjusted month-end financial institution statement balance.  The adjusted month-end financial institution statement balance is computed by adding subsequent deposits to and subtracting subsequent disbursements from the financial institution's month-end statement balance.

* * *

(d) Records to be Maintained.  Financial institution month-end statements, any canceled checks or copies of canceled checks provided with a financial institution month-end statement, duplicate deposit slips or deposit receipts generated by the financial institution, and records created in accordance with section (a) of this Rule shall be maintained for a period of at least five years after the date the record was created.

The hearing judge found that Ms. Dailey violated Rule 19-407(a), (b), and (d) by failing to create and maintain appropriate trust account records as required by this Rule pertaining to the funds received from Mr. Wolst.  Despite multiple requests by Bar Counsel, Ms. Dailey produced no trust account records, nor any records regarding the receipt and

27

maintenance of Mr. Wolst's funds.  Accordingly, we agree that Ms. Dailey violated Rule 19-407(a), (b), and (d).

## SANCTION

As we have often stated, the purpose of attorney disciplinary proceedings is not to punish the lawyer, but to protect the public and deter other lawyers from engaging in misconduct.  *See Attorney Grievance Comm'n v. Yi*, 470 Md. 464, 499 (2020) (citing *Woolery*, 456 Md. at 497–98).  "The public is protected when sanctions are 'commensurate with the nature and gravity of the violations and the intent with which they were committed.'"  *Smith-Scott*, 469 Md. at 363 (quoting *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 596 (2005)).

Bar Counsel recommends that we disbar Ms. Dailey because of "her intentional misappropriation of client funds, abandonment of a client, and intentional misrepresentations to Bar Counsel."  On the other hand, Ms. Dailey argues that we should dismiss her case with no sanction as she excepts to all the hearing judge's conclusions, and because her *pro bono* work and lack of prior discipline should militate against disbarment.

"In fashioning an appropriate sanction in attorney disciplinary proceedings, '[w]e determine the appropriate sanction by considering the facts of the case, as well as balancing any aggravating or mitigating factors.'"  *Sanderson*, 465 Md. at 67 (quoting *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 337 (2013)).  Accordingly, our consideration of aggravating and mitigating factors "can be critical in the selection of an appropriate sanction."  *Yi*, 470 Md. at 500.

28

This Court has emphasized that "[a]ggravating factors" are those which tend to "militate in favor of a more severe sanction[.]" *Smith-Scott*, 469 Md. at 364 (alteration in original) (quoting *Sanderson*, 465 Md. at 67). "The existence of aggravating factors must be demonstrated by clear and convincing evidence." *Johnson*, 472 Md. at 547 (citing *Edwards*, 462 Md. at 708).

The hearing judge found the existence of seven aggravating factors: (1) a dishonest or selfish motive; (2) multiple offenses; (3) bad faith obstruction of the disciplinary process; (4) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (5) refusal to acknowledge the wrongful nature of the conduct; (6) substantial experience in the practice of law; and (7) indifference to making restitution. We agree with each.

Ms. Dailey acted with a selfish or dishonest motive when she misappropriated Mr. Wolst's funds and then proceeded to abandon her representation of him. *See Viladegut*, 473 Md. at 66 (finding a selfish motive when an attorney accepted fees they did not earn, failed to return those unearned fees, made knowing and intentional misrepresentations to their clients regarding the status of their cases, and abandoned their cases); *Davenport*, 472 Md. at 35–36 (finding a selfish motive when an attorney "completely abandoned [their] representation of [a] client, without providing any services of value, and failed to refund any funds paid. . . . [When a complaint was filed] with Bar Counsel, [this attorney] failed to participate in the investigation in any manner."). Further, Ms. Dailey violated multiple rules as explained *supra*.

Ms. Dailey undertook substantial steps throughout Bar Counsel's investigation and the circuit court proceedings to obstruct her case. Ms. Dailey failed to comply with Bar Counsel's requests for information and intentionally evaded service of a subpoena for her statement under oath. Despite Bar Counsel's requests to produce documents, Ms. Dailey failed to provide certain records and did not attend her scheduled deposition. *See Viladegut*, 473 Md. at 66 (finding that an attorney "engaged in bad faith obstruction of Bar Counsel's investigation by ignoring numerous requests for information") (emphasis omitted).

Ms. Dailey repeatedly misrepresented facts to Bar Counsel throughout the investigation and submitted an invoice with fabricated and inflated meeting times to conceal her misappropriation of Mr. Wolst's funds. Additionally, Ms. Dailey continues to deny the wrongfulness of her conduct, instead insisting that Mr. Wolst was to blame for her failures in representation. Ms. Dailey has substantial experience in the practice of law, as asserted in her exceptions, but has demonstrated an indifference to paying restitution or making her client whole.

"[T]he existence of mitigating factors[7] tends to lessen or reduce the sanction an attorney may face." *Smith-Scott*, 469 Md. at 365 (quoting *Sanderson*, 465 Md. at 70).

---

[7] This Court considers several factors of mitigation as enumerated in American Bar Association ("ABA") Standard 9.32. *Miller*, 467 Md. at 224 (citing *Attorney Grievance Comm'n v. Paul*, 423 Md. 268, 281 n.13 (2011)).

> Mitigating factors include:
> (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5)

When an attorney presents mitigating factors, the attorney must prove them by a preponderance of the evidence. *Sanderson*, 465 Md. at 70. The hearing judge found only one mitigating factor: lack of prior discipline. As a result of not participating in the hearing process, Ms. Dailey failed to present any other mitigating factors to the hearing judge, and we decline to find any.

Of particular note, Ms. Dailey has made much of her *pro bono* practice and the services she provides to indigent clients. This Court has previously noted that *pro bono* work supports a finding of good character as a mitigating factor. See *Johnson*, 472 Md. at 549 (noting that evidence of *pro bono* work supports good character). However, by virtue of Ms. Dailey's failure to participate in the hearing process, the extent and nature of her *pro bono* work was never presented or tested before the hearing judge. Thus, we conclude

> full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the [MARPC]; and (14) unlikelihood of repetition of the misconduct.

*Johnson*, 472 Md. at 548 n.34 (quoting *Attorney Grievance Comm'n v. Maldonado*, 463 Md. 11, 49 n.9 (2019)).

that Ms. Dailey failed to show that, by a preponderance of the evidence, her *pro bono* work was sufficient to support a finding of good character.

We also decline to uphold Ms. Dailey's exception that the duration of this proceeding should mitigate the charge against her. Much of the delay in this case was caused by Ms. Dailey's failure to participate in the discovery process or properly coordinate with Bar Counsel and the hearing judge. Accordingly, we decline to find any additional mitigation, apart from lack of prior discipline, to militate against disbarment.

Although Ms. Dailey has no prior discipline, as we have noted in the past, "[t]he presence of one mitigating factor cannot overcome the aggregation of [Ms. Dailey's] many transgressions along with several aggravating factors." *Karambelas*, 473 Md. at 177. Ms. Dailey's misappropriation of client funds alone is enough to warrant disbarment. *See id.* (citing *Attorney Grievance Comm'n v. Sullivan*, 369 Md. 650, 655–56 (2002)). Additionally, she has shown no willingness to take responsibility for her actions, failed to pay restitution to her client, and failed to cooperate with Bar Counsel. Ms. Dailey even went so far as to submit fabricated documents to Bar Counsel to conceal her rule violations. As this Court has emphasized, "disbarment ordinarily should be the sanction for intentional dishonest conduct." *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418 (2001). "Unlike matters warranting a lesser degree of discipline, '[i]ntentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse.'" *Attorney Grievance Comm'n v. Joseph*, 422 Md. 670, 707 (2011) (quoting *Vanderlinde*, 364 Md. at 418). Accordingly, considering Ms. Dailey's misappropriation of client funds

32

and her fraudulent conduct, and because we fail to find sufficient mitigation to reduce the sanction, we conclude disbarment is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MITZI ELAINE DAILEY.**