*Attorney Grievance Commission of Maryland v. Thereen Dian Daley*, Misc. Docket AG No. 69, September Term, 2019. Opinion by Getty, C.J.

**ATTORNEY DISCIPLINE — SANCTION — INDEFINITE SUSPENSION**

Respondent, Thereen Dian Daley, violated several provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") when she made intentional misrepresentations to opposing counsel during her representation of her client, communicated directly with an opposing party whom she knew to be represented by counsel, failed to cooperate with Bar Counsel during its investigatory process, and made intentional misrepresentations to Bar Counsel.

Ms. Daley's conduct violated the following rules of professional conduct: 4.1 (Truthfulness in Statements to Others); 4.2 (Communications with Persons Represented by an Attorney); 8.1 (Bar Admission and Disciplinary Matters); and 8.4 (Misconduct). These violations warrant an indefinite suspension.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 69

September Term, 2019

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

THEREEN DIAN DALEY

---

Getty, C.J.
McDonald,
Watts,
Hotten,
Booth,
Biran,
Adkins,
  (Senior Judge, Specially Assigned)

JJ.

---

Opinion by Getty, C.J.

---

Filed: October 22, 2021

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Invariably, this Court has emphasized the importance of an attorney's timely answer to a Petition for Disciplinary or Remedial Action and active participation with Bar Counsel during the discovery process in an attorney discipline proceeding. *See, e.g.*, *Attorney Grievance Comm'n v. Dailey*, 474 Md. 679, 690 (2021) (highlighting the attorney's failure to comply with Bar Counsel's investigation and the discovery process and stating, "[h]ad [the attorney] been responsive, she may have avoided the most significant rule violations" the Court found); *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 550 (2014) (demonstrating an attorney's failure to respond to a Petition for Disciplinary or Remedial Action resulted in a default judgment against the attorney, allowing this Court to treat the averments therein as admitted); *Attorney Grievance Comm'n v. Young*, 473 Md. 94, 107–08 (2021). Failure to timely answer a Petition for Disciplinary or Remedial Action may result in an order of default against the attorney. Additionally, without active participation with Bar Counsel during the discovery process, for example by failing to respond to a request for admissions and failing to attend the hearing before the hearing judge, an attorney may be disadvantaged when he or she comes before this Court.

This disadvantage is highlighted in this attorney discipline case that involves an attorney, Thereen Dian Daley, who represented her husband in a dispute with his condominium association. During the course of her representation, Ms. Daley made knowingly false statements to opposing counsel and communicated directly with the opposing party without the consent of that party's counsel. Ms. Daley failed to timely file an answer to the Petition for Disciplinary or Remedial Action, respond to Bar Counsel's request for admissions, and attend the disciplinary hearing. Ms. Daley submitted false

information and made knowingly false statements in her communications with Bar Counsel.

Based upon these violations found by the hearing judge, which are supported by clear and convincing evidence in the record, indefinite suspension from the practice of law in Maryland is the appropriate sanction for Ms. Daley.

## BACKGROUND

### A. Procedural Context

On February 21, 2020, the Attorney Grievance Commission of Maryland (the "Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") in this Court alleging that Ms. Daley violated the Maryland Attorneys' Rules of Professional Conduct ("MARPC")[1]. The Petition alleged that Ms. Daley violated the following Rules: 19-304.1 (Truthfulness in Statements to Others); 19-304.2 (Communications with Persons Represented by an Attorney); 19-304.4 (Respect for Rights

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct and recodified without substantive changes in Title 19 of the Maryland Rules. Because Ms. Daley's misconduct occurred both before and after the recodification of the MLRPC, she committed violations of the same rules of professional conduct under both the MLRPC and the MARPC. For simplicity, and because there is no substantive difference in the two codifications of the rules, we shall use the shorter designations of the MLRPC, *e.g.*, "Rule 1.1."

of Third Persons);[2] 19-308.1 (Bar Admission and Disciplinary Matters); and 19-308.4 (Misconduct).

By Order dated February 25, 2020, Ms. Daley's matter was transmitted to the Circuit Court for Howard County, pursuant to Maryland Rule 19-722(a) for a hearing before Judge Timothy J. McCrone (the "hearing judge") to make findings of fact and conclusions of law. Ms. Daley was served with the Petition, Writ of Summons issued by the circuit court on May 18, 2020, and this Court's Order dated February 25, 2020. Ms. Daley submitted a Motion to Postpone her matter, which the hearing judge denied on August 12, 2020. Ms. Daley was then served with Bar Counsel's First Request for Admission of Facts and Genuineness of Documents on August 19, 2020. Ms. Daley did not file an answer to Bar Counsel's request.

On September 8, 2020, with no answer to the Petition having been filed, Bar Counsel filed a Motion for Order of Default, to which Ms. Daley did not file an opposition. The hearing judge entered an Order of Default against Ms. Daley on September 18, 2020, and she was issued a notice of the order the same day. Through counsel, Ms. Daley filed an answer to the Petition on September 21, 2020, but she did not file a motion to vacate the Order of Default within the thirty-day period allowed under Rule 2-613(d).

Bar Counsel filed a request for a hearing in the circuit court. Ms. Daley filed an opposition to Bar Counsel's request and moved to dismiss the claims and default judgment against her. The hearing judge granted Bar Counsel's request on January 19, 2021 and

---

[2] Bar Counsel withdrew its allegation that Ms. Daley violated MARPC 19-304.4.

3

scheduled a hearing for March 3, 2021. Bar Counsel opposed Ms. Daley's motion to dismiss and to vacate default judgment, and Ms. Daley filed a reply to Bar Counsel's opposition. Ms. Daley also filed a "Supplemental (Merit) Opposition to AGC's 'Petition for Disciplinary or Remedial Action'" on February 27, 2021.

On March 3, 2021, the hearing judge heard arguments from Ms. Daley's attorney regarding her motion to dismiss and to vacate the default judgment. The hearing judge denied the motion and continued with the hearing as scheduled. Ms. Daley did not attend the hearing or present mitigating evidence. Under Rule 2-424(b), the matters for which Bar Counsel's requested admissions were deemed admitted, and those admissions were received into evidence.

On March 4, 2021, Ms. Daley filed a motion for reconsideration regarding the hearing judge's March 3, 2021 decisions, and Bar Counsel filed an opposition on March 18. On March 19, the hearing judge denied Ms. Daley's motion. Bar Counsel filed Proposed Findings of Fact and Conclusions of Law on March 25, and the hearing judge issued a judgment adopting those findings of fact and conclusions of law on March 30. On April 8, Ms. Daley, through counsel, filed exceptions to the hearing judge's findings of fact and conclusions of law. This Court heard oral argument in this matter on September 14, 2021.

## B. Factual Findings

We summarize the hearing judge's factual findings below.[3]

Ms. Daley was admitted to the Maryland Bar on December 17, 2002. At all times relevant to this matter, Ms. Daley maintained a post office box address in Howard County that she used in connection with her law practice.

### 1. *Waterford Landing*

In 2008, Austin Valentine purchased a condominium located in Waterford Landing Condominium, Inc. ("Waterford Landing"), a condominium community located in Essex, Maryland. Ms. Daley lived with Mr. Valentine in his condominium from 2011 until 2014. The pair married in 2014.[4] Waterford Landing has a governing body called the Council of Unit Owners of Waterford Landing (the "Council"). Wallace H. Campbell & Company, Inc. ("Campbell"), a property management company, served as managing agent for Waterford Landing at all times relevant to this case. Susan G. Saltsman, Management Supervisor for Campbell, oversaw the management of Waterford Landing. The law firm

---

[3] The hearing judge adopted Bar Counsel's document titled "Petitioner's Proposed Findings of Fact and Conclusions of Law" in its entirety. Thus, the findings of fact and conclusions of law discussed in this opinion are presented from that source.

[4] Bar Counsel's pleadings state Ms. Daley and Mr. Valentine were married in 2014 but are unclear regarding where Ms. Daley and Mr. Valentine resided after 2014.

of Oliveri & Associates, LLC, and attorneys John Oliveri and Timothy Larsen, represented both the Council and Campbell.

The Council elects a Board of Directors (the "Board") to implement Waterford Landing's declaration, bylaws, and rules and regulations (collectively, the "governing documents"). Waterford Landing's leasing policy required owners who leased their units to pay a $500.00 move-in fee and provide Campbell with (1) proof of a criminal background check, (2) proof of the tenant's liability insurance, (3) a copy of the lease agreement, and (4) an addendum to the lease agreement showing the tenant read and understood Waterford Landing's rules and regulations. The bylaws permit the Board to impose charges and fines for late payment of the assessments and for violations of the governing documents. A unit owner may be assessed a $50.00 fine for an initial violation of the governing documents, a $100.00 fine for a repeated violation, and a $20.00 per day fine until the unit owner cures the violation.

### 2. *Mr. Valentine's Violations*

In December 2015, the Board discovered Mr. Valentine did not comply with the leasing policy before allowing tenants to occupy his unit, and his neighbors filed several noise complaints against his unit. Ms. Saltsman, on behalf of the Council, wrote to Mr. Valentine on three occasions between December 29, 2015 and February 23, 2016 concerning complaints about Mr. Valentine's tenants and his failure to comply with

6

Waterford Landing's leasing policy. Mr. Valentine did not address his violations within the timeframe provided in Ms. Saltsman's correspondence.

The Board then scheduled a hearing for May 25, 2016 to determine whether Mr. Valentine violated the governing documents. Mr. Valentine received written notice of the hearing on March 22, 2016 and April 26, 2016. Mr. Valentine did not attend the hearing. In his absence, the Board found he violated provisions of the governing documents and directed him to address the noise complaints and comply with the leasing policy within ten days. For the noise violation, he was charged a $50.00 fee and a $20.00 per day fee for ongoing violations. For the failure to comply with the leasing policy, he received an additional fine of $10.00 per day for the ongoing violations. The Board noted that the fines would stop accruing upon confirmation that Mr. Valentine cured the violations.

Mr. Valentine failed to remedy the violations, and on July 19, 2016, Campbell informed Mr. Valentine in writing that his fines were delinquent in the amount of $420.00. Campbell further advised that, if the amount was not paid within fifteen days, Mr. Valentine's account would be referred to an attorney for collection. In August 2016, Waterford Landing referred Mr. Valentine's account to Oliveri & Associates for collection of the unpaid amounts.

On September 1, 2016, Mr. Oliveri wrote to Mr. Valentine to inform him that Oliveri & Associates would represent Waterford Landing in connection with Mr. Valentine's delinquent account. Mr. Oliveri stated that Mr. Valentine should contact him to make payment arrangements. At this time, Mr. Valentine owed $1,295.00 in fines, fees, and costs. Mr. Oliveri also mentioned that the Council intended to record a lien against Mr.

7

Valentine's property if the past due amounts were not paid within fifteen days or disputed within thirty days. Mr. Valentine did not pay or dispute the fees, and on September 20, 2016, Mr. Larsen served Mr. Valentine with the Council's Notice of Intent to Create a Lien. Again, Mr. Valentine failed to take steps toward resolving his debt, and a lien was recorded in the land records for Baltimore County on October 28, 2016. Pursuant to Waterford Landing's bylaws, Oliveri & Associates mailed a notice of the lien to Mr. Valentine's mortgage holder, Rosedale Federal Savings and Loan Association ("Rosedale Federal").

Rosedale Federal contacted Mr. Larsen to inquire about Mr. Valentine's balance on November 2, 2016 and November 9, 2016. Mr. Larsen informed Rosedale Federal on November 8, 2016 that Mr. Valentine's balance was $4,498.06 and provided a breakdown of the amount. The same day, Rosedale Federal paid the balance in full by withdrawing funds from an escrow account Mr. Valentine held there in connection with his mortgage.

### 3. Ms. Daley's Involvement

On October 31, 2016, Ms. Daley called Mr. Larsen and advised that she represented Mr. Valentine in connection with his dispute. On November 9, 2016, Mr. Larsen wrote to Ms. Daley and provided the balance statement for Mr. Valentine's account and enclosed various documents that Ms. Daley requested during the October 31 telephone call. Ms. Daley sent several emails to Mr. Larsen in which she requested the balance owed and advised that the tenants living with Mr. Valentine were his daughter and his daughter's mother, but Ms. Daley refused to provide their names.

Ms. Daley wrote to Mr. Larsen on December 20, 2016 to ask why Mr. Valentine's monthly condominium charges were returned to him for "the past several months." Mr.

8

Larsen replied the next day and stated he contacted Campbell to get additional information and asked that all payments thereafter be sent to his office. Again, on January 5, 2017, Ms. Daley contacted Mr. Larsen to inquire why the Council's bank would not accept Mr. Valentine's payments. Ms. Daley stated that she contacted the Consumer Protection Division of the Maryland Office of the Attorney General regarding this issue.

Ms. Daley wrote to Mr. Larsen on January 18, 2017 and requested additional information relating to Mr. Valentine's account. Mr. Larsen responded on January 27 and provided a breakdown of Mr. Valentine's balance owed, requested that Mr. Valentine reveal the names of the unauthorized tenants living in his unit, and explained that the Council does not accept monthly assessment payments from unit owners who are in collection proceedings and that all payments should be directed to Oliveri & Associates.

In February 2017, the Council stopped imposing fees on Mr. Valentine when it learned that the unauthorized tenants vacated the premises. However, in April 2017, Mr. Valentine leased his property to a new tenant without following Waterford Landing's leasing policy. On April 19, 2017, Ms. Daley attended the Council's open meeting. During the meeting, which did not relate to Mr. Valentine's violations, Ms. Daley accused Ms. Saltsman of intentionally causing her to trip and fall on the stairs outside of Mr. Valentine's unit on September 18, 2016. Ms. Saltsman stated that she believed Ms. Daley submitted a false insurance claim against the Council's insurance company regarding the September 2016 incident. Ms. Daley did not cooperate with the insurance company's request for information, the claim was closed, and Ms. Daley did not take additional steps in connection with the claim.

9

Ms. Daley filed suit against Ms. Saltsman and Campbell on May 15, 2017 in the District Court of Maryland for Baltimore County. She alleged defamation based on Ms. Saltsman's statements at the meeting on April 19, 2017. On August 18, 2017, Mr. Larsen appeared on behalf of Ms. Saltsman and Campbell for trial. Before trial, Mr. Larsen attempted to settle with Ms. Daley, but she stated she would dismiss her lawsuit only if Ms. Saltsman was terminated from her position at Campbell. Mr. Larsen did not agree to Ms. Daley's offer. When the case was called, Ms. Daley requested a postponement because she was taking medication for a toothache. The trial was rescheduled for September 15, 2017.

On September 15, 2017, Mr. Larsen appeared, as did Ms. Daley with her counsel for the case, Joseph A. Scalia, II. The parties ultimately settled prior to trial. Ms. Saltsman agreed to privately apologize to Ms. Daley if the apology was subject to a confidentiality agreement signed by Ms. Daley. Trial was postponed again until September 29, 2017 to finalize the settlement agreement and dismiss the case. Before Ms. Saltsman could apologize, Mr. Scalia advised Mr. Larsen that Ms. Daley wished to dismiss the case. Ms. Saltsman never apologized to Ms. Daley, and Mr. Larsen never prepared a confidentiality agreement for Ms. Daley to sign. Ms. Daley dismissed her complaint with prejudice on September 28, 2017.

During September 2017, the Council was still addressing Mr. Valentine's violations of the leasing policy regarding the new unauthorized tenant. The Board scheduled a hearing for November 6, 2017 to determine whether Mr. Valentine violated the governing documents and whether any fines should be imposed. Ms. Saltsman advised Mr. Valentine

10

of the hearing by letter dated October 19, 2017. On October 26, Ms. Daley responded in writing on behalf of Mr. Valentine to inform the Council that Mr. Valentine could not attend the hearing due to a death in his family. The Board rescheduled the hearing for November 30, 2017.

On October 19, 2017, Ms. Daley wrote to Rosedale Federal regarding Mr. Valentine's dispute with Ms. Saltsman and Campbell. She stated in the letter that Waterford Landing engaged in fraud, that the lien was invalid, and that Rosedale Federal should not have paid Oliveri & Associates or Waterford Landing. Ms. Daley also accused the Council of filing a lien because Ms. Saltsman was upset that Ms. Daley filed an insurance claim related to her fall on September 2016 outside of Mr. Valentine's unit. In the letter, Ms. Daley claimed that she dropped her defamation claim against Ms. Saltsman and Campbell after Ms. Saltsman admitted in writing to lying when she accused Ms. Daley of filing a fraudulent insurance claim.

On October 27, 2017, Rosedale Federal, through counsel, contacted Mr. Larsen regarding the allegations stated in Ms. Daley's October 19 letter. Mr. Larsen determined that the matter should be litigated based on Ms. Daley's allegations of fraud and sent a letter to Rosedale Federal on November 2 returning the funds received in connection with Mr. Valentine's account.

The night before the Board's November 30, 2017 hearing was to take place, Ms. Daley emailed Mr. Larsen to inform him that Mr. Valentine would not attend the hearing the following day. On November 30, the Board conducted the hearing without Mr. Valentine and determined he was in violation of the leasing requirements and imposed a

11

fine of $20.00 per day until Mr. Valentine cured the violations. On December 7, Mr. Larsen advised Ms. Daley of the Board's determination and stated that the Board would waive any new fines if Mr. Valentine complied with the leasing requirements by December 22. Mr. Valentine complied with the leasing requirements, and the Board waived the new fines.

In late December 2017, Ms. Daley and Mr. Larsen exchanged a series of emails. Ms. Daley claimed she spoke with Gilbert Allen and his supervisor in the Maryland Office of the Attorney General regarding Mr. Valentine's inability to pay his monthly dues through the system operated by the Council's bank. Ms. Daley also asserted that she contacted Brian E. Frosh, the Attorney General of Maryland, regarding the issue.

In an email dated December 21, 2017, Ms. Daley stated she would contact Mr. Allen in the Attorney General's office no later than noon the next day if she did not receive confirmation of Mr. Valentine's payments being approved. Ms. Daley sent another email the next day stating she spoke with Mr. Allen's supervisor, and she instructed Mr. Larsen to contact them. Mr. Larsen called Mr. Allen who confirmed he had not spoken with Ms. Daley about the dispute involving Mr. Valentine. Then, Mr. Larsen responded to Ms. Daley via email to convey the substance of his conversation with Mr. Allen.

In February 2018, Ms. Daley began contacting Ms. Saltsman directly and stated she would no longer communicate with Ms. Saltsman through her attorney at Oliveri & Associates. Mr. Larsen repeatedly requested Ms. Daley communicate through him, but Ms. Daley continued to contact Ms. Saltsman directly. After receiving an email from Mr. Larsen detailing why Mr. Valentine could not pay his monthly dues through the online system, Ms. Daley replied by email dated February 14, 2018 that "I do not represent Mr.

12

Valentine, I represent my family's interest. Those are two different things." Mr. Larsen responded by email the next day and stated that there was no reason for him to contact Ms. Daley about Mr. Valentine's issues if she did not represent him. That same day, she replied, "Mr. Valentine is my family and I represent my family."

On July 1, 2019, Rosedale Federal filed a foreclosure action against Mr. Valentine. In the foreclosure action, a suggestion of bankruptcy was filed, and the matter was stayed on November 11, 2019.

### 4. *Bar Counsel's Investigation*

In April 2018, Bar Counsel initiated an investigation of Ms. Daley's conduct related to her representation of Mr. Valentine. Bar Counsel wrote to Ms. Daley on April 11 and attached copies of her email correspondence with Mr. Larsen. Bar Counsel requested that Ms. Daley respond in writing by May 2, 2018 addressing her communications in light of the MARPC. On June 13, 2018, Ms. Daley faxed Bar Counsel a letter, dated the day before, that stated she dropped her defamation case against Ms. Saltsman in 2017 after Ms. Saltsman provided a written statement acknowledging she lied about Ms. Daley. On June 20, Ms. Daley further responded to Bar Counsel by stating Campbell had not raised another issue or filed another claim since it was "forced to return . . . funds in 2017."

Bar Counsel wrote to Ms. Daley on October 9, 2018, to request that she provide dates to arrange for her statement under oath pursuant to Rule 19-712. Ms. Daley replied on October 17 and stated she would not provide any dates. Instead, she requested the

13

matter be deferred until she concluded her other civil and criminal matters.[5] Bar Counsel stated there was no basis to defer action because the matters were unrelated to its investigation and requested that Ms. Daley provide dates for her statement under oath. Ms. Daley did not respond.

Bar Counsel filed a motion for a hearing in the circuit court to which Ms. Daley opposed through her Opposition to Bar Counsel's Request for Hearing and Cross Motion to Dismiss and Revoke Default Judgment, dated January 7, 2021. In that document, Ms. Daley asserted she received the summons but not the Petition or any of the documents served on her and that she learned of Bar Counsel's "formal action" against her in late 2020. The hearing judge found that as of July 21, 2020, Ms. Daley had received a copy of the Petition and this Court's Order dated February 25, 2020, transmitting the matter to the Circuit Court for Howard County.

## STANDARD OF REVIEW

In attorney discipline proceedings, this Court reviews a hearing judge's findings of fact for clear error when exceptions are filed. *See* Md. Rule 19-740(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of a witness."); *Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 332 (2020) ("[T]his Court reviews for clear error a hearing judge's findings of fact[.]"). This Court reviews de novo the hearing judge's conclusions of law. Md. Rule 19-740(b)(1). Under Rule

---

[5] At this time, Ms. Daley had pending civil and criminal matters unrelated to Bar Counsel's investigation.

19-727(c), Bar Counsel bears the burden of proving its averments by clear and convincing evidence. Rule 19-726, which applies to post-complaint discovery, permits Bar Counsel to serve requests for admission of facts and genuineness of documents. Under Rule 2-424(b), "[e]ach matter of which an admission is requested shall be deemed admitted" if the party fails to timely respond to the request.

Each party may file exceptions to the hearing judge's findings of fact and conclusions of law. Md. Rule 19-728(b). When a party excepts to the hearing judge's findings of fact or conclusions of law, this Court must "determine whether the findings of fact have been proved by the requisite standard of proof" under Rule 19-727(c). *Smith-Scott*, 469 Md. at 332. A hearing judge's findings of fact are not clearly erroneous if "there is any competent evidence to support" the findings. *Id.* (quoting *Attorney Grievance Comm'n v. Donnelly*, 458 Md. 237, 276 (2018)). When the hearing judge's findings of fact "are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Id.* at 333 (quoting *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 419 (2009)).

## DISCUSSION

### A. Exceptions to the Hearing Judge's Findings of Fact and Conclusions of Law

On April 8, 2021, Ms. Daley, through counsel, filed exceptions to the hearing judge's findings of fact and conclusions of law. Bar Counsel did not file any exceptions.

Ms. Daley's exceptions asserted that she was not properly served with process[6] and that she could refute Bar Counsel's allegations of her numerous false statements. However, Ms. Daley did not attend the disciplinary hearing to present evidence opposing Bar Counsel's allegations, nor did she present evidence of mitigating factors. Consequently, the hearing judge adopted Bar Counsel's findings of fact and conclusions of law, and the hearing judge concluded by clear and convincing evidence that Ms. Daley violated Rules 4.1, 4.2, 8.1, and 8.4. Those conclusions are supported by the factual findings. For those reasons, we overrule Ms. Daley's exceptions and consider each violation in turn.

### B. Rule 4.1

Rule 4.1(a) is "exceedingly straightforward." *Smith-Scott*, 469 Md. at 357. The Rule provides, in part: "[i]n the course of representing a client an attorney shall not knowingly: (1) make a false statement of material fact or law to a third person[.]" Based on our independent review of the record, we agree with the hearing judge and find that Ms.

---

[6] Ms. Daley contends the hearing judge erred in finding that Bar Counsel properly served her. The hearing judge's finding is based upon Ms. Daley's July 21, 2020 correspondence in which Ms. Daley mentioned that she received at least three versions of Bar Counsel's complaint.

16

Daley violated Rule 4.1 by making numerous false statements to several parties connected to her representation of Mr. Valentine.

The hearing judge concluded that Ms. Daley violated Rule 4.1 by writing to Rosedale Federal on October 19, 2017 and stating that: (1) Waterford Landing and Campbell were engaging in fraud; (2) the lien Waterford Landing filed against Mr. Valentine's property was invalid; (3) Waterford Landing only filed the lien because Ms. Saltsman was upset about Ms. Daley filing an insurance claim; and (4) Ms. Daley withdrew her defamation lawsuit after Ms. Saltsman admitted in writing that she lied when she accused Ms. Daley of filing a fraudulent insurance claim. The hearing judge also concluded that Ms. Daley violated Rule 4.1 when she told Mr. Larsen she had been in contact with Mr. Allen, Mr. Allen's supervisor, and Attorney General Frosh regarding Mr. Valentine's inability to pay his dues electronically. These statements were knowingly false.

While representing Mr. Valentine, Ms. Daley wrote to Rosedale Federal regarding the lien filed on Mr. Valentine's property. In a letter dated September 1, 2016, Mr. Larsen informed Mr. Valentine of Waterford Landing's intent to file a lien on his condominium if he did not pay or dispute his fines before September 20, 2016. Ms. Daley fell outside of Mr. Valentine's apartment on September 18, 2016, over two weeks after Mr. Larsen already expressed Waterford Landing's intent. The timeline of events supports the hearing judge's conclusion of law by clear and convincing evidence.

The hearing judge's conclusion that Ms. Daley made a knowingly false statement regarding the defamation lawsuit against Ms. Saltsman is also supported by clear and

convincing evidence. While Ms. Daley and Ms. Saltsman agreed to settle the case through an apology subject to a confidentiality agreement, neither the apology nor the confidentiality agreement came to fruition before Ms. Daley dismissed her complaint with prejudice.

Finally, Ms. Daley falsely stated to Mr. Larsen that she was in contact with Mr. Allen, Mr. Allen's supervisor, and Attorney General Frosh regarding Waterford Landing's collection practices. The record shows that Ms. Daley emailed Mr. Larsen an ultimatum to have Waterford Landing accept Mr. Valentine's payments by a certain time before she contacted the Maryland Office of the Attorney General. Mr. Larsen called Mr. Allen, who stated he had not spoken to Ms. Daley about Mr. Valentine's matter, and did not direct Ms. Daley to tell Mr. Larsen to call him. Mr. Larsen also contacted Mr. Allen's supervisor, Karen Straughn, who also stated she had not spoken to Ms. Daley. For those reasons, this Court upholds the hearing judge's finding of Ms. Daley's violation of Rule 4.1, which is supported by clear and convincing evidence.

## C. Rule 4.2

The hearing judge found that Ms. Daley violated Rule 4.2(a) and (b), which governs communications with persons represented by an attorney. Based on our review of the record, we uphold the hearing judge's conclusion. Rule 4.2 states, in pertinent part:

> (a) Except as provided in section (c) of this Rule, in representing a client, an attorney shall not communicate about the subject of the representation with a person who the attorney knows is represented in the matter by another attorney unless the attorney has the consent of the other attorney or is authorized by law or court order to do so.

18

(b) If the person represented by another attorney is an organization, the prohibition extends to each of the organization's (1) current officers, directors, and managing agents and (2) current agents or employees who supervise, direct, or regularly communicate with the organization's attorneys concerning the matter or whose acts or omissions in the matter may bind the organization for civil or criminal liability. The attorney may not communicate with a current agent or employee of the organization unless the attorney first has made inquiry to ensure that the agent or employee is not an individual with whom communication is prohibited by this section and has disclosed to the individual the attorney's identity and the fact that the attorney represents a client who has an interest adverse to the organization.

Rule 4.2(a)–(b); *see also Attorney Grievance Comm'n v. Trye*, 444 Md. 201, 219 (2015) (emphasizing that an attorney, when acting in a "representational capacity[,]" may not discuss the "legal matter with a person the lawyer knows to be represented with respect to the matter" absent consent from opposing counsel).

Ms. Daley directly contacted Ms. Saltsman via email in February 2018, despite knowing that Mr. Larsen and Oliveri & Associates represented Ms. Saltsman in her capacity as Management Supervisor of Campbell. The content of Ms. Daley's emails to Ms. Saltsman related to the dispute with Mr. Valentine. Mr. Larsen requested on multiple occasions that Ms. Daley cease communications with Ms. Saltsman directly, yet Ms. Daley refused. Ms. Saltsman's position at Campbell makes Rule 4.2(b) applicable as she is Management Supervisor who is in regular contact with Mr. Larsen and Oliveri & Associates. The record does not contain facts that show Ms. Daley had consent to contact Ms. Saltsman directly. Thus, we find that Ms. Daley violated Rule 4.2(a) and (b).

**D. Rule 8.1**

Ms. Daley also violated Rule 8.1(a) and (b). Rule 8.1 requires attorneys to "demonstrate candor and cooperation with the disciplinary authorities of the Bar."

19

*Smith-Scott*, 469 Md. at 358 (quoting *Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 356 (2020)).  Rule 8.1 states:

> [A]n attorney . . . in connection with a disciplinary matter, shall not:
>
> (a) knowingly make a false statement of material fact; or
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

Rule 8.1(a)–(b).  Upon an independent review of the record, we agree with the hearing judge's conclusions that Ms. Daley violated Rule 8.1(a) and (b).

Previously, this Court has found a violation of Rule 8.1(a) "where an attorney knowingly made misrepresentations to Bar Counsel during the course of Bar Counsel's investigation." *Attorney Grievance Comm'n v. Moawad*, 475 Md. 424, 477 (2021) (citing *Attorney Grievance Comm'n v. Mollock*, 450 Md. 133, 153 (2016)).  In her letter dated June 12, 2018 and in her communication on June 20, 2018, Ms. Daley knowingly made false statements to Bar Counsel in violation of Rule 8.1(a).  Ms. Daley included false statements in the letter, as she stated she dropped her defamation case against Ms. Saltsman after Ms. Saltsman admitted in writing that she lied about Ms. Daley.  As discussed above, the record shows Ms. Daley's statement was false.  Additionally, on June 20, 2018, Ms. Daley contacted Bar Counsel again to state that Campbell had not raised another issue or filed another claim since it was "forced" to return the funds Rosedale Federal paid to it.  However, upon discovering Ms. Daley sent a letter to Rosedale Federal alleging its lien was fraudulent, Mr. Larsen directed his client to voluntarily return the amount collected to

20

Rosedale Federal and was not "forced" to do so. Under these facts, we agree that Ms. Daley violated Rule 8.1(a).

Ms. Daley violated Rule 8.1(b) by failing to timely respond to Bar Counsel's request that Ms. Daley address her communications with Mr. Larsen in light of the MARPC. This Court has held that an attorney violates Rule 8.1(b) by failing to meaningfully respond to Bar Counsel's lawful requests for information in a timely manner. *Attorney Grievance Comm'n v. Shuler*, 454 Md. 200, 215 (2017); *Attorney Grievance Comm'n v. Gracey*, 448 Md. 1, 27 (2016) ("Failing to respond to Bar Counsel's lawful request of information is a violation of Rule 8.1(b).").

Bar Counsel, in its April 11, 2018 communication, asked that Ms. Daley provide insight into her conduct relating to her representation of Mr. Valentine by May 2, 2018. Bar Counsel did not hear from Ms. Daley until June 13, 2018 when it received a faxed letter dated June 12, 2018, six weeks after the May 2 deadline. Ms. Daley was also not cooperative when Bar Counsel asked her to provide dates for her statement under oath pursuant to Rule 19-712. Ms. Daley declined to provide dates to give a statement under oath and stated she "cannot commit to anything else" at that time. Ms. Daley's failure to timely respond to Bar Counsel's requests support the conclusion that Ms. Daley violated Rule 8.1(b).

### E. Rule 8.4

Finally, we conclude that Ms. Daley violated Rule 8.4 (a), (c), and (d). Rule 8.4 provides, in pertinent part:

It is professional misconduct for an attorney to:

21

(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

Rule 8.4(a), (c)–(d). This Court consistently reaffirms the "well-established principle that an attorney violates [Rule 8.4(a)] when she or he violates other professional rules." *Attorney Grievance Comm'n v. Keating*, 471 Md. 614, 650 (2020) (citing *Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 395 (2009)). Based on our conclusion that Ms. Daley violated Rules 4.1, 4.2(a) and (b), 8.1(a) and (b), and 8.4(c) and (d), we conclude that she violated Rule 8.4(a).

We find that Ms. Daley also violated Rule 8.4(c). Rule 8.4(c) applies to a "broad universe" of misconduct. *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 39 (2014). We have previously held that violations of Rule 8.1(a) also constitute violations of Rule 8.4(c). *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 222 (2020); *Attorney Grievance Comm'n v. Singh*, 464 Md. 645, 677 (2019). Likewise, the conclusion that an attorney violated Rule 4.1 results in the conclusion that the attorney violated Rule 8.4(c). *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 366–67 (2006) (stating the attorney's violations of Rule 4.1 "further violate [Rule] 8.4(c)"). In violating Rule 4.1(a)(1) and Rule 8.1(a), Ms. Daley also violated Rule 8.4(c).

Finally, we find Ms. Daley violated Rule 8.4(d). An attorney violates Rule 8.4(d) when his or her conduct is "prejudicial to the administration of justice." Conduct is prejudicial to the administration of justice when it "reflects negatively on the legal profession and sets a bad example for the public at large" or is "likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court[.]" *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 22 (2007); *Attorney Grievance Comm'n v. Agbaje,* 438 Md. 695, 717 (2014). An attorney's violation of Rule 8.4(c) may also constitute a violation of Rule 8.4(d). *Dailey*, 474 Md. at 710.

Ms. Daley's lack of timely responses during the fact-finding process, her numerous false statements made to opposing counsel and to Bar Counsel, and her refusal to communicate with Ms. Saltsman through her retained counsel, Mr. Larsen, contribute to a finding that Ms. Daley's conduct was prejudicial to the administration of justice. As such, we find that Ms. Daley violated Rule 8.4(d).

## SANCTION

As we have often stated, the purpose of attorney discipline proceedings is not to punish the attorney, but to protect the public and deter other lawyers from engaging in misconduct. *Attorney Grievance Comm'n v. Yi*, 470 Md. 464, 499 (2020) (citing *Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 497–98 (2017)). The public is protected "when sanctions are 'commensurate with the nature and gravity of the violations and the

23

intent with which they were committed.'" *Smith-Scott*, 469 Md. at 363 (quoting *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 596 (2005)).

Bar Counsel recommends that we indefinitely suspend Ms. Daley for her violations of the MARPC. Ms. Daley argues that we should dismiss her case with no sanction and vacate the default judgment against her because of perceived procedural defects with Bar Counsel's service of process and because she can now refute Bar Counsel's claims even though she did not participate in the disciplinary hearing.

To determine the appropriate sanction in attorney discipline proceedings, we "consider[] the facts of the case, as well as balanc[e] any aggravating or mitigating factors." *Attorney Grievance Comm'n v. Sanderson*, 465 Md. 1, 67 (2019) (quoting *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 337 (2013)). Accordingly, our consideration of aggravating and mitigating factors "can be critical in the selection of an appropriate sanction[.]" *Yi*, 470 Md. at 500. This Court has emphasized that "[a]ggravating factors militate in favor of a more severe sanction[.]"[7] *Smith-Scott*, 469 Md. at 364 (alteration in

---

[7] Aggravating factors include:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [Rules]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

24

original) (quoting *Sanderson*, 465 Md. at 67). In contrast, "mitigating factors tend[] to lessen or reduce the sanction an attorney may face."[8] *Id.* at 365 (quoting *Sanderson*, 465 Md. at 70).

The hearing judge found that Ms. Daley did not prove any mitigating factors by a preponderance of the evidence, as required under Rule 19-727(c), but did find the existence of the following aggravating factors: (1) multiple offenses; (2) bad faith obstruction of the disciplinary proceedings; (3) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; and (4) refusal to acknowledge the wrongful nature of her conduct. We agree with each.

---

*Attorney Grievance Comm'n v. Johnson*, 472 Md. 491, 546 n.33 (2021).

[8] Mitigating factors include:

> (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the [MARPC]; and (14) unlikelihood of repetition of the misconduct.

*Johnson*, 472 Md. at 548 n.34.

As we have established, Ms. Daley violated several Rules during her representation of Mr. Valentine and her disciplinary proceedings. Ms. Daley made knowingly false statements in her communications with Mr. Larsen by stating she contacted Mr. Allen, Mr. Allen's supervisor, and Attorney General Frosh. She refused to contact Ms. Saltsman's retained counsel, Mr. Larsen, and instead opted to communicate directly with Ms. Saltsman regarding the legal matters at issue. Ms. Daley also failed to timely respond to Bar Counsel's legitimate requests for information, and when she did respond, Ms. Daley submitted false statements and evidence to Bar Counsel.

Ms. Daley did not attend her hearing before the hearing judge and therefore failed to participate in the fact-finding process and present mitigating testimony in her defense. While Ms. Daley quibbles with Bar Counsel's service of process and contends that she can refute Bar Counsel's claims, the proper forum to do so is before the hearing judge. However, Ms. Daley did not appear at her hearing to present mitigating evidence. Additionally, Ms. Daley's failure to respond to discovery requests required the matters within the requests to be deemed admitted and accepted into evidence under Rule 2-424(b). This Court must now rely on Bar Counsel's uncontested evidence alone in determining Ms. Daley's sanction. There are no mitigating factors for us to weigh against the aggravating factors that have been proven by clear and convincing evidence.

Accordingly, based upon the findings of fact and conclusions of law of the hearing judge, and considering the violations of the MARPC outlined above, the aggravating factors, and the absence of mitigating factors, indefinite suspension from the practice of law in Maryland is the appropriate sanction for Ms. Daley.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d). JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST THEREEN DIAN DALEY.**